**Michael BLAKE and Stephen Blake, Plaintiffs,**

v.

**Michael CICH, Michael Sundstrom, and City of Minneapolis, Defendants.**

**Civ. No. 4-75-584.**

United States District Court, D. Minnesota, Fourth Division.

July 18, 1978.

---

8. Schedule, items 41–47.

Larry B. Leventhal, Minneapolis, Minn., for plaintiffs.

Jerome F. Fitzgerald and Les Karjala, Asst. City Attys., Minneapolis, Minn., for defendants.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter comes before the Court on plaintiffs' motion for a new trial. Plaintiffs, who are Native Americans, brought this action under 42 U.S.C. §§ 1983, 1985, with pendent common-law tort claims of assault and battery, charging defendant police officers with beating them in the course of their arrest and delivery to jail. Plaintiffs also sued the City of Minneapolis, alleging that the city was liable for the actions of defendant officers under the doctrine of respondeat superior and for negligence. At the close of plaintiffs' case, the Court directed a verdict for the city. The jury returned a verdict in favor of defendant officers.

This lawsuit arises out of incidents which occurred on October 17, 1974. That afternoon, Officers Michael Cich and Michael Sundstrom were on duty in their capacity as police officers for the City of Minneapolis. At approximately 2 p. m., in answer to a radio call, the officers investigated a complaint of vandalism at a church at the intersection of Chicago Avenue and 31st Street in Minneapolis. Officer Sundstrom went inside the church to discover the cause of the complaint, while Officer Cich remained in the squad car. A passing motorist directed Officer Cich's attention across Chicago Avenue to a house from which two young men were taking a stereo to a nearby car. Officer Cich crossed the street to investigate and encountered plaintiffs on their way back to the house. He asked them to stop and provide identification. Plaintiffs indicated that their identification was in the house. At this point, the testimony of the plaintiffs and defendants diverged. Plaintiffs testified that Officer Cich grabbed and then began to strike Stephen Blake. They testified that Cich did not relent when Stephen's brother Michael summoned their father from the house, but instead continued to strike both Blake brothers and sprayed Mace on all three Blakes. Officer Cich testified that both plaintiffs attacked him and that such force as he used was necessary to defend himself. Officer Sundstrom emerged from the church during the struggle and came to the aid of his partner. Michael and Stephen Blake were arrested and placed in the squad car.

The testimony of the parties concerning the delivery of plaintiffs to jail also materially differed. In arriving at the courthouse, the officers drove through a tunnel into a basement delivery area. There, plaintiffs testified, both officers resumed the beating begun at the scene of the arrest, using gloves, boots, a flashlight, and a cigarette to inflict pain. The officers admitted that some force was used but testified that it was necessary to remove the uncooperative prisoners from the squad car and to defend themselves from attack. Each denied any sadistic attack upon plaintiffs.

Testimony commenced on January 24, 1978, and lasted four days. The jury deliberated for three days, twice reporting to the Court that they were deadlocked. Upon the second report, the parties stipulated to accept the verdict of five jurors as the verdict of the six-person jury. See Fed.R. Civ.P. 48. The jury returned a short time later with a verdict for defendant officers. Plaintiffs advance several grounds for a new trial, including jury selection, juror misconduct, evidentiary error, dismissal of the city, and that the verdict was against the weight of the evidence.

### 1. Selection of the Jury

One of the grounds plaintiffs advance as a basis for their motion for a new trial is alleged inadequacies in jury selection. Plaintiffs argue, first, that the jury panel was not representative of the community, second, that the Court failed to inquire sufficiently as to racial bias, and, third, that the Court abused its discretion in excusing a juror during trial.

█ In their memorandum in support of the motion, plaintiffs raise for the first time the contention that the jury panel "appeared to be skewed against minorities and youths." The Court finds this bare conclusory allegation both substantively inadequate, see 28 U.S.C. § 1867(d) (requiring a sworn statement of facts), and untimely, id. § 1867(c).

█ A trial court has broad discretion in determining the proper scope of voir dire. *Labbee v. Roadway Express, Inc.,* 469 F.2d 169, 172 (8th Cir. 1972); cf. *United States v. Kershman,* 555 F.2d 198, 202 (8th Cir. 1977), *cert. denied,* 434 U.S. 892, 98 S.Ct. 268, 54 L.Ed.2d 178 (1977). The breadth of this discretion is circumscribed where voir dire interrogation introduces prejudicial matter before prospective jurors, *Wichmann v. United Disposal, Inc.,* 553 F.2d 1104, 1108–09 (8th Cir. 1977) (inquiry as to abstract feelings about insurance coverage), or is of too limited scope to reveal possible biases among the veniremen, cf. *United States v.*

*Bowles*, 574 F.2d 970 (8th Cir. 1978) (failure to inquire about racial prejudice where criminal defendant is black).

■ In the instant case, the Court conducted the voir dire [1] and asked the following question of the jury panel:

> Plaintiffs in this case are Native Americans. All individuals bringing or defending lawsuits stand equal in a court of law, no matter their race, heritage, or position in society. Have any of you had any dealings or experiences with Indian individuals or Native Americans that might make it difficult for you to make an impartial judgment about this case?

There was no affirmative response from any members of the jury panel. After questioning the jury panel, the Court called counsel to the bench and asked for requests for supplementary inquiries. See Fed.R. Civ.P. 47(a). Plaintiffs' counsel did not request further interrogation of the jury panel or individual veniremen as to racial bias. The Court finds that in the circumstances of this case, the question it asked adequately explored possible racial prejudice among members of the jury panel.

■ During the afternoon recess of the second day of trial, one of the jurors was approached by a spectator who implied in a threatening manner that the jury should find for plaintiffs. The juror brought the incident to the attention of the Court. The Court, after speaking with the juror and consulting with the attorneys in chambers, excused the juror and replaced him with an alternate. The juror stated that he thought he could still be impartial but wondered if the incident might have a subtle effect on his judgment. Plaintiffs' counsel did not object to the excusal of the juror. The Court finds excusal amply justified by the circumstances. See, *Anderson v. Dun & Bradstreet, Inc.*, 543 F.2d 732 (10th Cir. 1976). No other juror overheard the implicit threat or learned of the reason for the excusal of the juror.

## 2. *Juror Misconduct*

In an affidavit, one of the jurors stated that another juror uttered a statement in the jury waiting room before the commencement of the third day of trial, concerning plaintiffs. The juror, who later became the jury foreman, stated in the presence of the other jurors, "These kids are certainly after something." One of the other jurors then replied "Ah hah." Plaintiffs argue that this conduct entitles them to a new trial.

■ It is well settled that a juror may not impeach the verdict as to matters that inhere therein after the jury has been discharged. The rule has both an evidentiary and a substantive basis, and a party must clear both hurdles to overturn a verdict. *United States v. Eagle*, 539 F.2d 1166 (8th Cir. 1976), *cert. denied*, 429 U.S. 1110, 97 S.Ct. 1146, 51 L.Ed.2d 563 (1977). The evidentiary hurdle of juror incompetency is codified in Fed.R.Evid. 606(b):

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

If a juror is competent to impeach the verdict, the question becomes whether the evidence adduced is sufficient to provide a substantive ground to set aside the verdict. Generally, such grounds, like the exceptions to the rule of juror incompetency, involve extraneous influences on the jury. *Govern-*

---

1. As is the practice in federal district courts in the District of Minnesota. See United States District Court, District of Minnesota, Local Rule 6(C). See also Fed.R.Civ.P. 47(a).

*ment of Virgin Islands v. Gereau*, 523 F.2d 140, 150–51 (3d Cir. 1975), *cert. denied*, 424 U.S. 917, 96 S.Ct. 1119, 47 L.Ed.2d 323 (1976). Even if a party succeeds in establishing juror misconduct, he still must show prejudice resulted therefrom. *Id.; Smith v. Brewer*, 444 F.Supp. 482 (S.D.Iowa 1978); see, *Daleiden v. Carborundum Co.*, 438 F.2d 1017, 1024–25 (8th Cir. 1971).

■ Assuming that the affidavit is admissible, the Court finds its contents insufficient to set aside the verdict. The comment of the juror arose not from an extraneous influence, but from observation of the trial. The vagueness of the comment suggests that its effect on other jurors must have been negligible. Nor does the Court find the comment reveals a conviction of sufficient importance to support an inference that the speaker was biased against plaintiffs. *Morley v. Cranmore Ski-mobiles, Inc.*, 67 F.Supp. 812 (D.N.H.1946). Although inappropriate, the comment does not provide plaintiffs a ground for a new trial.

### 3. *Evidentiary Error*

As a further ground for new trial, plaintiffs cite as error the Court's refusal to allow plaintiffs to offer testimony as to lack of a prior criminal record as evidence of their good character and credibility. Plaintiffs contend that such evidence was admissible because their characters had been put in issue by testimony that they attacked defendant police officers, supported the American Indian Movement, etc.

■ Character evidence is admissible as substantive evidence when character is in issue. McCormick on Evidence, § 187 (2d ed. 1972); see Fed.R.Evid. 405(b). But the character of plaintiffs was not a substantive issue in this case. As substantive evidence, the proffered testimony was relevant only as circumstantial evidence, i. e., that

**2.** Subdivision (a) of rule 608 governs opinion and reputation evidence of a witness' character, while subdivision (b) governs the admissibility of specific instances of conduct. In one sense, the absence of a prior criminal record is a record of innumerable specific instances of

plaintiffs likely acted in conformity with their good character on the day of the incidents. Such testimony is irrelevant. Fed. R.Evid. 404(a).

■ Plaintiffs suggest alternatively that the evidence was properly offered to rehabilitate plaintiffs' credibilities. Plaintiffs argue that because Fed.R.Evid. 609 permits credibility to be attacked by evidence of prior criminal convictions, the absence of a criminal record should be similarly relevant. No authority is cited for this novel proposition. Rule 608(a) of the Federal Rules of Evidence appears to provide the appropriate standard governing the admissibility of such evidence: [2]

> The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

The proffered testimony runs afoul of both limitations. It first is not limited to the absence of convictions involving the character trait of truthfulness. And, more important, neither plaintiff's character *for truthfulness* had been attacked. Since the proffered evidence was improper both as substantive and impeachment evidence, its exclusion was proper.

### 4. *Directed Verdict for the City*

The Court directed a verdict for the City of Minneapolis at the close of plaintiffs' case. Plaintiffs argue that the ruling was incorrect because the doctrine of respondeat superior is applicable and because the city was negligent in supervising defendant police officers and the basement of the courthouse.

good conduct. But such a history becomes something more than the specific instances comprising it, it is what is generally meant by good character. As such, the evidence is more appropriately treated under rule 608(a).

Most of plaintiffs' argument on this point is directed to the availability of subject-matter jurisdiction under 28 U.S.C. § 1331(a). This case was tried before the decision in *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed. 611 (1978), in which the Supreme Court held that municipalities may be sued under 42 U.S.C. § 1983. Even so, the Court's ruling was not based on the ground of lack of jurisdiction. The Court found jurisdiction proper under 28 U.S.C. § 1331(a), for the claim against the city presented a federal question arising under the Constitution. See, *Mt. Healthy City School Dist. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Owen v. City of Independence,* 560 F.2d 925, 931 n. 6 (8th Cir. 1977), appeal pending. See also *Nix v. Sweeney,* 573 F.2d 998 (8th Cir. 1978). The basis of the ruling was the failure of plaintiffs to establish prima facie proof of a cause of action against the city.

■■■ Plaintiffs claimed that the City of Minneapolis was negligent in its supervision of defendant officers and in its supervision of the basement of the courthouse where plaintiffs were taken. No evidence was introduced, however, as to the amount of supervision the city exercised over the officers or how much supervision reasonably should have been exercised. The only evidence with respect to the basement of the courthouse indicated the absence of a television monitoring device or monitoring personnel. No evidence was introduced to indicate the precautions that were reasonably necessary to prevent the beating of police prisoners. Indeed, plaintiffs' evidence indicated that it was unusual for officers to take their prisoners to this area. In these circumstances, plaintiffs have failed to establish a duty on the part of the city to supervise the area.

The only employees of the city alleged to have been involved in the incident were defendant patrolmen. No evidence indicated that higher-ranking officers condoned defendants' alleged conduct or were aware of similar activities occurring in the past. In this circumstance, the doctrine of respon-deat superior is inapplicable. See, *Owen v. City of Independence,* 560 F.2d 925, 933–34 n. 9 (8th Cir. 1977) (dictum), appeal pending; *Adekalu v. New York City,* 431 F.Supp. 812 (S.D.N.Y.1977). See also *Monell v. Department of Social Services,* 436 U.S. 658, 688–696, 98 S.Ct. 2018, 2035–38, 56 L.Ed.2d 611 (1978).

### 5. *Weight of the Evidence*

■■■ Plaintiffs argue that the jury's verdict is against the clear weight of the evidence. It is the duty of the trial court, after reviewing all the evidence, to exercise its independent judgment in determining whether the verdict was against the clear weight of the evidence. *Lincoln Carpet Mills, Inc. v. Singer Co.,* 549 F.2d 80, 82 (8th Cir. 1977); *Simpson v. Skelly Oil Co.,* 371 F.2d 563, 570 (8th Cir. 1967). The Court is not bound to view the evidence most favorably to the party who prevailed, but may disbelieve witnesses and grant a new trial even where there is substantial evidence to sustain the verdict. *Bates v. Hensley,* 414 F.2d 1006, 1011 (8th Cir. 1969). The judge's discretion, however, is not unfettered. A new trial is not proper merely because the judge could have drawn different inferences than did the jury or because the judge feels the contrary result is more reasonable. *Fireman's Fund Ins. Co. v. Aalco Wrecking Co.,* 466 F.2d 179, 186 (8th Cir. 1972), cert. denied, 410 U.S. 930, 93 S.Ct. 1371, 35 L.Ed.2d 592 (1973). The judge must respect the role of the jury as trier of fact, but at the same time prevent miscarriages of justice. Whether a verdict would result in a miscarriage of justice is the ultimate standard in determining the propriety of a new trial. *Id.* at 187; *Reed Bros. v. Monsanto Co.,* 525 F.2d 486 (8th Cir. 1975), cert. denied, 423 U.S. 1055, 96 S.Ct. 787, 46 L.Ed.2d 645 (1976).

■■■ The subject matter of the instant litigation was relatively simple; the evidence was in sharp conflict and uncomplicated. The outcome turned on the comparative credibility of the parties. The Court has reviewed all the evidence and, in light of these circumstances, finds it cannot dis-

turb the jury's verdict. *Fireman's Fund Ins. Co. v. Aalco Wrecking Co.*, 466 F.2d 179, 187 (8th Cir. 1972), *cert. denied*, 410 U.S. 930, 93 S.Ct. 1371, 35 L.Ed.2d 592 (1973); *Hard v. Stevens*, 65 F.R.D. 637 (E.D.Pa.1975).

The Court having considered and rejected for the reasons advanced above each ground plaintiffs have advanced for a new trial, IT IS HEREBY ORDERED that plaintiffs' motion for a new trial is denied.