Lawrence MILES, Jr., Plaintiff,

v.

**The CITY OF MINNEAPOLIS and Minneapolis Police Officers Charles Storlie and Lawrence P. Loonsfoot, Defendants.**

**No. CIV. 98–1021(MJD/JGL).**

United States District Court, D. Minnesota.

Jan. 29, 2002.

Keith M. Ellison, Larry Eugene Reed, Hassan & Reed, Minneapolis, MN, for plaintiff.

James Anthony Moore, Burt T. Osborne, Susan L. Walgrave, Minneapolis City Attorneys, Minneapolis, MN, for defendants.

## MEMORANDUM AND ORDER

DAVIS, District Judge.

This matter is before the Court on Plaintiff's Motions for a New Trial and Judgment Notwithstanding the Verdict.

For the reasons that follow, the Court denies Plaintiff's motions.

## BACKGROUND

The underlying case involves the claims of Lawrence Miles, Jr., who at age 15 was shot in the back by Minneapolis Police Officer Charles Storlie as he was playing "tag" with his friends using BB guns. The trial in this case began on November 5, 2001. On November 20, 2001, the Court charged the jury. The jury considered claims of excessive force, battery, intentional infliction of emotional distress and negligent infliction of emotional distress against Officer Charles Storlie, and conspiracy to deprive plaintiff of his right to liberty against Officers Charles Storlie and Lawrence Loonsfoot. On November 26, 2001, the jury rendered a verdict for Defendants on all counts.

After the jury returned its verdict and was discharged, one of the jurors notified the Court about an incident that occurred over the Thanksgiving weekend when the jury was on recess. The juror's cousin had been shot and killed by a police officer in Kansas City, Missouri. The Court had reason to believe that the juror related that information to other jurors when they reconvened to deliberate on Monday, November 26, 2001. On November 28, 2001, the Court notified counsel of this information by letter and instructed counsel that no one is permitted to have contact with the jurors without the Court's permission.

On December 8, 2001, Plaintiff moved for a new trial. The parties submitted memoranda, and the Court heard oral arguments on December 21, 2001. The Court will address each argument in turn.

## DISCUSSION

### 1. Judgment Notwithstanding the Verdict

■ Plaintiff moves for judgment notwithstanding the verdict on the basis that the evidence adduced at trial does not support a finding that Officer Storlie's shooting was objectively reasonable. Plaintiff bears a heavy burden on its motion for judgment notwithstanding the verdict. *Haynes v. Bee–Line Trucking Co.,* 80 F.3d 1235, 1238 (8th Cir.1996) (citation omitted). In considering the motion, the Court must (1) view the evidence in the light most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved in favor of the prevailing party; (3) assume as proved all facts that the prevailing party's evidence tended to prove; and (4) give the prevailing party the benefit of all favorable inferences that may reasonably be drawn from the facts proved. *Id.* After such consideration, the court must deny the motion if reasonable people could differ as to the conclusions to be drawn from the evidence. *Id.*

In the underlying case, Defendants' position has been that Officer Storlie shot Lawrence Miles, Jr., in the back to protect the life of his partner Officer Loonsfoot from a perceived lethal threat. Defendants' position has been that Lawrence Miles, Jr., pointed what police believed was a gun at Officer Loonsfoot. Plaintiff's position has been that he was running out the back door of his apartment building and away from his friends when he fell down the stairs, dropping the BB gun with which he was playing. Plaintiff's position is that he continued to run away from his friends, not knowing about the presence of the police officers, when he was shot in the back.

Plaintiff points to the evidence and testimony produced at trial to support his argument that the shooting was not objectively reasonable. First, Plaintiff argues that three eyewitnesses—Burrell Wheaton, Anthony Wallen, and Lee Ann Boorsma, Defendants' witness and police ride-along on the evening of the incident—testified

that Plaintiff was not holding a BB gun in his hand when he was shot. Second, Plaintiff points to Officer Storlie's testimony that he did not know where his partner, Officer Loonsfoot, was located when he fired the shot at Plaintiff. Third, Plaintiff points to Officer Loonsfoot's statement during trial that Plaintiff probably did not even know that the officers were outside his building. Next, Plaintiff notes that David Grossi, Defendants' police expert, testified that if Plaintiff had been running from the officers, and even if he had a BB gun in his hand, he should not have been shot if he did not pose a threat. Finally, Plaintiff advances the testimony of firefighter Leonard Thompson, who first saw the BB gun near the northwest corner of the apartment building, and later saw the BB gun located where Plaintiff lay shot, after Plaintiff had been transported to the ambulance.

■ Although Plaintiff raises compelling arguments in support of his motion, they are not sufficient to meet the heavy burden required for a judgment notwithstanding the verdict. On the evidence presented in the case, the jury could find that under the totality of circumstances, Officer Storlie fired his shotgun to protect the life of his partner, Officer Loonsfoot. The testimony of both Officer Storlie and Officer Loonsfoot places the realistic BB gun in Plaintiff's hand and being raised in the direction of Officer Loonsfoot at the time of the shooting. The arguments Plaintiff raises, although compelling, would require the Court to second-guess how the jury weighed the testimony and considered this testimony against the other testimony and evidence in the case. Granting Plaintiff's motion would require the Court to not consider the evidence in the light most favorable to Defendants; to assume that the conflicts Plaintiff raised were not resolved by the jury in Defendants' favor; to assume that Defendants failed to prove their facts; and to disregard any favorable

inference that could reasonably be drawn from Defendants' facts. Because reasonable people could differ on the conclusions to be drawn from the evidence, the Court denies Plaintiff's motion.

■ Plaintiff also asserts that he is entitled to judgment notwithstanding the verdict because the jurors awarded $0 in response to all damages questions, including for past medical expenses, despite the jury instructions to answer damages questions regardless of answers to other questions. Defendants argue that the damage award is consistent with Jury Instruction Number 58, which states: "If you find that Plaintiff is entitled to recover damages because Defendants used excessive force, then you should allow the Plaintiff such damages as resulted from the use of force in excess of what was reasonably necessary." Defendants argue that because the jury found that Officer Storlie did not use excessive force, Plaintiff's injuries were caused by the application of reasonable force. Defendants argue that the jury's determination that damages amounted to zero, therefore, is consistent with the factual findings and the instructions of law. The Court agrees with Defendants' reasoning, and concludes that the jury's findings on damages is not a basis for entering judgment notwithstanding the verdict.

## 2. Juror Misconduct

■ Next, Plaintiff challenges the verdict on the basis that one juror may have tainted the jury process by introducing information about the shooting of a family member in Kansas City, Missouri, over the Thanksgiving weekend. It is well-settled law that a juror may not impeach the verdict as to matters that inhere therein after the jury has been discharged. *Blake v. Cich,* 79 F.R.D. 398, 402 (D.Minn.1978). "The rule has both an evidentiary and a substantive basis, and a party must clear

both hurdles to overturn a verdict." *Id.* (citing *United States v. Eagle,* 539 F.2d 1166 (8th Cir.1976).) Rule 606(b) of the Federal Rules of Evidence outlines the requirements for this type of query into the validity of a verdict:

> [A] juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict ... or concerning the mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

Fed.R.Evid. 606(b).

■ Even if a party succeeds in establishing juror misconduct, that party must demonstrate resulting prejudice. *Blake,* 79 F.R.D. at 403. Thus, "[i]n a civil case, the exposure of extraneous evidence to the jury mandates a new trial only upon a showing that the materials are prejudicial to the unsuccessful party." *Porous Media Corp. v. Pall Corp.,* 110 F.3d 1329, 1340 (8th Cir.1997) (citation and quotation omitted).

■ In this case, the information that the juror related could be considered extraneous information. However, that information had no relevance to any fact or credibility issue before the jury in this case. Accordingly, because that information did not bear upon the issues to be decided by the jury in this case, the Court concludes it was not prejudicial. *See Peterson v. Gen. Motors Corp.,* 904 F.2d 436, 440 (8th Cir.1990) (concluding that because the automobile magazine introduced into the jury room did not mention the General Motors vehicle involved in the trial case or discuss any alleged defective component part, extraneous material was not prejudicial).

■ Plaintiff also raises the question whether a Minneapolis Star Tribune article released on the first day of deliberations could have improperly influenced the jury. Although the Court sympathizes with Plaintiff concerning the quality and prejudice of the reporting, there is no evidence that jurors read the article. The Court gave instructions to the jury before, during, and at the close of trial to disregard anything they may have heard or seen elsewhere about this case and to decide this case solely on the evidence before them. There is no evidence to indicate that the jurors failed to heed these instructions.

### 3. Jury Instructions

■ Plaintiff also argues that Jury Instruction Numbers 28 and 29 were erroneously submitted to the jury. The objection to Jury Instruction Number 29 regarding use of force under Minnesota law is not properly preserved. Plaintiff made no objection to the instruction at the charge conference. In fact, Plaintiff requested that the instruction be placed after the definition of battery and the language "[w]ith respect to the battery claim only" be added at the beginning of the instruction. The Court further concludes that Jury Instruction Number 28 on deadly force, which was taken from the Minnesota Civil Jury Instruction Guide 60.60, accurately reflects Minnesota law and was properly submitted to the jury in connection with Plaintiff's battery claim.

## CONCLUSION

Based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion for a New Trial (Clerk Doc. No. 143) and Motion for Judgment Notwithstanding the Verdict are **DENIED**.