656 P.2d 905

**Irene DURAN, Plaintiff-Appellant,**

v.

**Manuel L. LOVATO, Defendant-Appellee.**

**No. 5733.**

Court of Appeals of New Mexico.

Dec. 2, 1982.

Certiorari Denied Jan. 11, 1983.

Matias A. Zamora, P.A., Frank Bachicha, Jr., Bachicha Legal Services, P.A., Santa Fe, for plaintiff-appellant.

James E. Thomson, Santa Fe, for defendant-appellee.

## OPINION

LOPEZ, Judge.

The plaintiff appeals an adverse judgment in her suit for personal injuries as a result of being hit by defendant's automobile. We reverse. The issues presented are: 1. Whether the court erred in permitting Officer Archuleta to give opinion testimony, and in not striking that portion of the opinion uttered over objections, and 2. Whether the court erred in denying plaintiff's motion for a hearing on jury misconduct and motion for mistrial.

FACTS

At 5:15 p.m. on November 26, 1976, the plaintiff, a pedestrian, was struck by an automobile driven by the defendant on North Railroad Ave., in Espanola, New Mexico. The facts as to how the accident occurred are disputed. The plaintiff's version was that she was off the roadway and standing on the curb when she was hit by the defendant's car. The defendant claims that the plaintiff was on the roadway in front of him. Plaintiff filed suit to recover damages for her personal injuries, and a jury trial was had on July 7, 1980. At trial plaintiff presented evidence of liability, including testimony of the investigating police officer, Florencio Archuleta.

Officer Archuleta was called by plaintiff to testify about the scene of the collision. Specifically, the officer testified that he had been trained in accident investigation, trained in preparation of accident reports, and that his reports regarding this collision were prepared in accordance with his training. Plaintiff introduced pictures and a diagram, of the area where the collision occurred. The diagram was prepared by Officer Archuleta.

On cross-examination defendant questioned Officer Archuleta regarding the area of impact between plaintiff and defendant's car, and where plaintiff, and plaintiff's shoe (which was jarred from her foot upon impact) were situated on the street after the accident. Defendant also asked the officer whether speed was a contributing factor in the accident. Plaintiff made timely objections to much of Archuleta's testimony, and moved to strike the objectionable testimony. The trial court deemed Archuleta an expert, and, though sometimes requiring additional foundational evidence regarding his expertise, permitted him to give opinions on the matters objected to. Plaintiff claims the trial court erred in permitting this opinion evidence.

The case was later submitted to the jury. After a verdict for defendant was announced, juror Felix DePaula told plaintiff's counsel that he and other jurors had conducted a speed test during the trial. The test occurred during a lunch break while the jurors were returning from Chama to the courthouse in Tierra Amarilla. The speed test apparently consisted of four or five jurors in a car driving 20 or 22 miles per hour on the open highway so that they might get a feel for that speed. Testimony

at trial indicated that the defendant's car was traveling about 20 to 25 miles per hour when the collision occurred.

Plaintiff moved for a mistrial, and to permit deposition of DePaula. Plaintiff also moved for a hearing regarding the jurors' conduct. The court permitted DePaula's deposition, but denied the motion for a hearing and for a mistrial. Plaintiff claims the court erred in denying the motions.

POINT I.

WHETHER THE COURT ERRED BY RECEIVING THE INVESTIGATING OFFICER'S OPINION TESTIMONY.

On cross-examination the officer testified by giving his opinion as to the point of impact and speed. He testified 1. that the point of impact could not happened on the curb; 2. that defendant's speed was not a contributing factor in the accident; 3. that the defendant's attention or possible inattention was not a contributing factor to the accident; and 4. that plaintiff was not standing on the curb when she was hit. The plaintiff contends that the officer was not qualified as an expert and that the only basis for his opinion was his observation of the plaintiff and her shoe on the ground, and the measurements which he took as to physical locations of objects. Plaintiff further contends that no tests were conducted by him or the officer. Nor did the officer know crucial factors, such as grade, or roadway co-efficient of friction, reported speed, stopping distance formulas where skidmarks are not present, height of wound on plaintiff's leg, or the weight of the car. The plaintiff further contends that the officer's opinion should have been excluded because the basis of the opinion was not shown.

Based upon these contentions the plaintiff challenges the court's ruling and thus states that the case should be reversed.

In response the defendant contends that the officer was plaintiff's witness and that the plaintiff asked where the area of impact was and what the safe speed limit was. The defendant further contends that plaintiff introduced his exhibit No. 23, a diagram of the accident scene, prepared by the officer, through the officer's testimony. On cross-examination the defendant questioned the officer about this diagram. The defendant finally contends that because of numerous objections by the plaintiff the court required further qualification of the officer. The court repeatedly stated that it considered the officer an expert in view of his testimony, training, background and experience.

We set forth, verbatim, the trial court's ruling concerning its consideration of the officer as an expert:

Counsel, I have reviewed the testimony, the recollection that I have of the testimony, and I do recall that Counsel for the Plaintiff did ask Detective Archuleta if one of the things that he did in the course of his accident scene investigation was to determine the safe speed of the area, and that question was answered. He has testified that he's been qualified to give expert opinion before in District Court in this District, most recently, a few weeks ago in Santa Fe. He also has testified that he has given his expert opinion on point of impact before in District Court. He also has testified that he has received training and has a great deal of experience in accident scene investigation. He had personal view of the accident scene shortly after the time of the accident, and he discussed or talked with both the Defendant and the Plaintiff in this case. Accordingly, upon reconsideration, the Court will not reverse itself and rule that the witness now on the stand, Detective Florencio Archuleta, is [not] a qualified expert witness to give an opinion on the area of impact in this case and, therefore, the motion to strike that testimony is denied. I believe there was testimony as to the area of impact. It will not have to be repeated.

I also rule that he is qualified to give an opinion on whether or not the speed of the Defendant's vehicle was a contributing factor. That testimony has also been given, and the motion to strike it is denied.

I rule that he is qualified to give an opinion on whether or not the Plaintiff could have been on the curb at the time of impact, and that testimony was not given, and I will allow that testimony.

We must review New Mexico law and other authorities applicable to this case in order to determine whether the trial court committed reversible error. Rule 702 of the New Mexico Rules of Evidence permits testimony by experts "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise." N.M.R.Evid. 702, N.M.S.A. 1978.

Whether a witness qualifies as an expert is a decision for the trial court, and its determination will not be overturned absent a showing of abuse of discretion. *Winder v. Martinez,* 88 N.M. 622, 626, 545 P.2d 88 (Ct.App.1975), *cert. denied,* 89 N.M. 6, 546 P.2d 71 (1976). *See also Wood v. Citizens Standard Life Insurance Company,* 82 N.M. 271, 273, 480 P.2d 161 (1971) (Trial court has "wide discretion" in determining whether a witness qualified as an expert).

In *State v. Hargrove,* 81 N.M. 145, 464 P.2d 564 (Ct.App.1970), this court defined "judicial discretion" as follows:

"[J]udicial discretion is the option which the judge may exercise between the doing and the not doing of a thing, the doing of which can not be demanded as an absolute right of the party asking it to be done; and that an abuse of discretion is an erroneous conclusion and judgment, one that is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn from such facts and circumstances. While it may amount to an axiom to say that difference in judicial opinion is not synonymous with abuse of judicial discretion, it yet remains true that the latter signifies that a ruling or decision has been made that is clearly untenable. * *

It is really a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence."

81 N.M. at 147, 464 P.2d at 566 (Quoting Bowers, Judicial Discretion of Trial Courts § 12 (1931)).

Under the New Mexico Rules of Evidence emphasis is on qualifications of the witness to testify as an expert. *See* N.M.R.Evid. 702. Rule 702 requires some special knowledge, skill, experience, training or education on behalf of the witness before that witness will be considered an expert.

Rule 705 of the New Mexico Rules of Evidence provides that "[t]he expert may testify in terms of opinion, or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the judge requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination." N.M.R.Evid. 705, N.M.S.A. 1978.

The New Mexico Rules of Evidence are adaptations of the Federal Rules of Evidence. In *Twin City Plaza, Inc. v. Central Surety & Insurance Corp.,* 409 F.2d 1195 (8th Cir.1969), the court addressed admissibility of expert testimony pursuant to the federal rules as follows:

When basic foundational conditions are themselves conjecturally premised, it then behooves a court to remove the answer from one of admissible opinion to one of excludable speculation. Thus, a court may exclude evidence where an expert is asked for the speed of a vehicle based upon skid marks, when foundational evidence showing that the skid marks belong to the car in question is totally lacking. However, when such basic, relevant conditions are proven and the witness possesses sufficient qualifications, the answer is best received for whatever value it may ultimately have.

409 F.2d at 1200 (Citations omitted). It is noteworthy that the *Twin City Plaza* decision was handed down prior to adoption of the Federal Rules of Evidence. The court, however, expressly considered implications on the opinion of the then proposed draft of

the rules of evidence. *Id.* at 1201. Accordingly, the impact of the language in *Twin City Plaza* is not diminished by adoption of the rules subsequent to the decision.

In *Horton v. W.T. Grant Co.,* 537 F.2d 1215 (4th Cir.1976), the court noted the following limits on expert testimony:

It is generally held that relevant testimony from a qualified expert may be received if and only if he is in possession of such facts as would enable him to express a reasonably accurate conclusion as distinguished from mere conjecture. Although all of the facts and observations relied upon by an expert need not be independently admissible, there still must be an adequate basis for his testimony, and it is within the discretion of the district court to decide whether such a basis has been shown. *See Gilbert v. Gulf Oil Corp.,* 175 F.2d 705, 709 (4 Cir. 1949).

537 F.2d at 1218. *See also Logsdon v. Baker,* 517 F.2d 174, 175 (D.C.Cir.1975) (Expert could not predicate testimony solely on skid marks barely, if at all, discernible in a photo, and which skid marks were of attenuated connection to the complained of incident).

The record in the case at bar shows that the officer was asked by the defendant for his opinion on the "area of impact", and whether speed was a factor in the accident. The plaintiff called the officer as a witness, interrogating him with respect to his training and experience as a police officer. Plaintiff introduced into evidence a diagram of the accident scene which was prepared by the officer. The diagram contained measurements taken by the officer shortly after the collision. During defendant's cross-examination, the officer relied on the diagram and his notes to render an opinion regarding the area of impact and whether speed was a contributing factor in the accident.

We hold that based on the authorities, facts and circumstances in this case, the trial court did not abuse its discretion in holding that the officer was an expert witness. We also hold that the testimony objected to by the plaintiff was properly admitted.

POINT II.

WHETHER THE COURT ERRED IN DENYING PLAINTIFF'S MOTION FOR HEARING ON JURY MISCONDUCT, AND DENYING THE MOTION FOR A MISTRIAL.

Under this point the plaintiff challenges the jury's verdict on grounds of jury misconduct based on extraneous prejudicial information.

Plaintiff argues that a mistrial was warranted because the jurors acted in direct violation of the court's instructions, thereby depriving plaintiff of her due process right to a fair trial.

The court's instructions to the jury were as follows:

First of all, during recesses and adjournments, while the case is proceeding, you should not discuss the case with other jurors or with anyone else. You should not allow anyone to discuss this case in your presence or in your hearing * * *

    \*    \*    \*    \*    \*    \*

Now, the evidence which you will consider in this case in order to arrive at a true verdict consists of the testimony of witnesses, the exhibits, if there are any, which are admitted into evidence, any of the facts admitted or agreed to by the attorneys, and any fact which the Court instructs you to accept as true.

Now, you must not visit the scene of the accident on your own, and you cannot make experiments with reference to the case. You must decide the case solely upon evidence received in court * * *

Defendant argues that New Mexico law bars impeachment of a jury verdict by affidavit or testimony. Moreover, defendant argues that because plaintiff admitted that he was driving 20 to 25 miles per hour when the collision occurred, the complained of conduct regarding speed did not prejudice plaintiff. At this point we review New Mexico law and other authorities applicable to this issue.

■ The long standing rule in New Mexico is that affidavits and testimony of jurors, presented after the jury has been discharged, cannot be considered for purposes of impeaching the jury verdict. *See City of Clovis v. Ware,* 96 N.M. 479, 632 P.2d 356 (1981). However, the Supreme Court has not considered this rule in connection with an express provision of Evidence Rule 606(b).

Rule 606(b) pertains to the competency of jurors as witnesses, and provides as follows:

(b) **Inquiry into validity of verdict or indictment.** Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that *a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.* Nor may his affidavit or evidence of any statement by him concerning a matter about what he would be precluded from testifying be received for these purposes. [As amended, effective April 1, 1976.]

N.M.R.Evid. 606(b), N.M.S.A.1978. (Emphasis added).

Subdivision (b) of Rule 606 was amended in 1976 to conform to the federal rule. "The amendment broadens the exception for a juror's testimony concerning extraneous prejudicial information brought to the attention of the jury."

The Federal Rule Advisory Committee Notes to Rule 606 provides as follows:

The familiar rubric that a juror may not impeach his own verdict, dating from Lord Mansfield's time, is a gross oversimplification. The values sought to be promoted by excluding the evidence include freedom of deliberation, stability and finality of verdicts, and protection of jurors

against annoyance and embarrassment. *McDonald v. Pless,* 238 U.S. 264, 35 S.Ct. [783,] 785, 59 L.Ed. 1300 (1915). On the other hand, simply putting verdicts beyond effective reach can only promote irregularity and injustice. The rule offers an accommodation between these competing considerations.

The mental operations and emotional reactions of jurors in arriving at a given result would, if allowed as a subject of inquiry, place every verdict at the mercy of jurors and invite tampering and harassment * * * As to matters other than mental operations and emotional reactions of jurors, substantial authority refuses to allow a juror to disclose irregularities which occur in the jury room, but allow his testimony as to irregularities occurring outside and allows outsiders to testify as to occurrences both inside and out * * *

Under the federal decisions the central focus has been upon insulation of the manner in which the jury reached its verdict, and this protection extends to each of the components of deliberation . . . . *The policy does not, however, foreclose testimony by jurors as to prejudicial extraneous information or influences injected into or brought to bear upon the deliberative process.*

F.R.Evid. 606, Advisory Committee Notes, 28 U.S.C.A. (1975) (Emphasis added) (Citations omitted). *See also* Graham, Handbook of Federal Evidence, § 606 (1981).

In *Blake v. Cich,* 79 F.R.D. 398 (D.Minn. 1978), the court discussed impeachment of a jury verdict as follows:

It is well settled that a juror may not impeach the verdict as to matters that inhere therein after the jury has been discharged. The rule has both an evidentiary and a substantive basis, and a party must clear both hurdles to overturn a verdict. *United States v. Eagle,* 539 F.2d 1166 (8th Cir.1976), *cert. denied,* 429 U.S. 1110, 97 S.Ct. 1146, 51 L.Ed.2d 563 (1977). The evidentiary hurdle of juror incompetency is codified in Fed.R.Evid. 606(b) * *

If a juror is competent to impeach the verdict, the question becomes whether the evidence adduced is sufficient to provide a substantive ground to set aside the verdict. Generally, such grounds, like the exceptions to the rule of juror incompetency, involve extraneous influences on the jury. *Government of Virgin Islands v. Gereau,* 523 F.2d 140, 150–51 (3d Cir. 1975), *cert. denied,* 424 U.S. 917, 96 S.Ct. 1119, 47 L.Ed.2d 323 (1976). Even if a party succeeds in establishing juror misconduct, he still must show prejudice resulted therefrom. *Id.; Smith v. Brewer,* 444 F.Supp. 482 (S.D.Iowa 1978); see, *Daleiden v. Carborundum Co.,* 438 F.2d 1017, 1024–25 (8th Cir.1971).

79 F.R.D. at 402–03.

 Based upon the authorities we have reviewed and the facts and circumstances we conclude that impeachment is not aimed at the jury deliberations but at the extraneous prejudicial information or misconduct before the deliberations.

The alleged misconduct occurred when several jurors made independent speed tests. The speed test may constitute extraneous evidence. If so, that extraneous evidence may have been improperly brought to the jury's attention. Rule 606(b) permits impeachment of a verdict by juror affidavit or testimony when extraneous influence is involved. N.M.R.Evid. 606(b); F.R.Evid. 606(b). *See also* C. Mueller, Jurors' Impeachment of Verdicts and Indictments in Federal Court Under Rule 606(b), 57 Neb.L.Rev. 920, 943 (1978).

Pursuant to Evidence Rule 606(b), a juror is a competent witness to establish the existence of extraneous influences. Thus, the trial court properly permitted De-Paula's deposition. However, the trial court considered the motions, the written arguments of counsel and the deposition and not only denied the motion for a mistrial, but the motion for a hearing.

We hold that the trial court erred in denying plaintiff's motions for a hearing and for a mistrial. We reverse the order of the trial court denying plaintiff's motion for hearing and its motion for mistrial. This case is reversed and remanded for hearing on the issue of jury misconduct.

After the rehearing, the motion for a mistrial should not be granted unless the court finds that jury misconduct did in fact occur, and that such misconduct resulted in extraneous information reaching the jury. The court must also find that the information was prejudicial. *See Harris v. Deere & Co.,* 263 N.W.2d 727, 729–30 (Iowa 1978); *Thorp v. Makuen,* 73 A.D.2d 617, 422 N.Y.S.2d 456, 457 (1979). At the hearing the objecting party bears the burden of proving prejudice. *Hallmark v. Allied Products Corp.,* 132 Ariz. 434, 646 P.2d 319 (Ct.App.1982).

The appellate costs in the case at bar are to be paid by the appellee.

IT IS SO ORDERED.

WOOD and NEAL, JJ., concur.