692 P.2d 45

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Michael MELTON, Defendant-Appellant.**

**No. 7462.**

Court of Appeals of New Mexico.

Nov. 8, 1984.

Mary Jo Snyder, Santa Fe, for defendant-appellant.

Paul G. Bardacke, Atty. Gen., William Lazar, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

BIVINS, Judge.

Defendant appeals his convictions of two counts of receiving stolen property valued over one hundred dollars contrary to NMSA 1978, Section 30–16–11 (Repl.Pamp. 1984). He claims the trial court erred: (1) in refusing to grant a new trial based on jury misconduct in considering dictionary definitions; and (2) in denying admission into evidence a taped conversation between defendant and a witness, and in denying defendant the opportunity to call that witness as part of the defendant's case in chief. Finding no error in the court's rulings, we affirm.

■ This appeal raises a threshold jurisdictional question, not addressed by the parties, concerning jurisdiction to entertain this appeal. Defendant's notice of appeal refers to the judgment entered on or about September 6, 1983. The trial court, pursuant to defendant's motion, entered its amended judgment, sentence and commitment on September 21, 1983; however, defendant did not file another notice of appeal from the amended judgment. We hold that the notice of appeal filed after the return of verdict, as occurred here, applied to the amended judgment even though the date of the amended judgment is not set out in the notice. NMSA 1978, Crim., Child.Ct., Dom.Rel. & W/C App.R. 202(a) (Repl.Pamp.1983). Jurisdiction having been satisfied, we proceed to briefly set out the facts and then discuss the two appellate issues.

The stolen property consisted of two video games. A stolen "Galaga" game was found in a storage room assigned to defendant at the apartment complex where he lived. A second stolen video game, a "Donkey Kong, Jr.", was discovered at a video arcade, having been placed there by defendant. As to the "Galaga" game, defendant claimed he had refused delivery because of suspicious circumstances; and as to the "Donkey Kong, Jr." game, defendant contended he purchased it from third parties, not knowing it was stolen. A key witness for the prosecution, Phil McGourty, implicated defendant with the stolen property. Defendant's second issue focuses on McGourty whom defendant wished to recall to the stand and cross-examine as part of defendant's case with taped conversations between defendant and that witness.

## 1. Jury Misconduct

During the first day of deliberations, the jury sent a note to the trial court requesting a dictionary. After consulting with and obtaining concurrence of counsel, the court replied with a message telling the jury that they were not permitted to have a dictionary, and that they must rely on their own understanding of words and of the jury

instructions. According to affidavits filed after the trial, one of the jurors, during the evening recess, copied the dictionary definitions for the words, "control," "keep," "possess" and "possession." When the jury resumed its deliberations the following morning a piece of paper containing the definitions of those words was made available to the jury and was read by at least four of its members.

The trial court denied defendant's motion for new trial on the basis that the affidavits could not be considered to inquire into the validity of the verdict, but even if they could, still there was no prejudice and any error was harmless.

The resolution of this issue involves a three-step analysis. We must first determine if the affidavits could be considered. If so, then a determination has to be made as to whether a presumption of prejudice applies, or if defendant must carry the burden of proving prejudice. Finally, we determine if the trial court abused its discretion in finding no prejudice.

Defendant argues, and the state agrees, that the circumstances of this case fall within the exception to NMSA 1978, Evid. Rule 606(b) (Repl.Pamp.1983). After providing that a juror may not testify as to matters or statements occurring during deliberations, or the effect upon any juror's mind or emotions, or concerning his mental process, Rule 606(b) states that "a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention ...."

■ We are not concerned whether juror testimony as to the *effect* of the dictionary definitions would have been admissible; only whether extraneous information was improperly brought to the jury's attention which might be prejudicial. We hold that under the Rule 606(b) exception, the affidavits could be considered. *State v. Doe*, 101 N.M. 363, 683 P.2d 45 (Ct.App.1984). This view finds support in federal cases construing identical language in the federal evidentiary rule. *See, e.g., United States v. Duncan*, 598 F.2d 839 (4th Cir.1979).

Did the reference to dictionary definitions by at least four of the jurors create a presumption of prejudice that the state must overcome, or does defendant have the burden showing prejudice? In *State v. Doe* we said that in cases dealing with improper communications, federal requirements of due process require prejudice be presumed. *See also State v. Gutierrez*, 78 N.M. 529, 433 P.2d 508 (Ct.App. 1967). Defendant argues that because the trial court specifically denied the jury's request for a dictionary, the conduct of one juror bringing dictionary definitions amounted to an improper communication. We agree. In *State v. Beal*, 48 N.M. 84, 146 P.2d 175 (1944), the supreme court held that when it has once been established that there was a communication made to the jury, a presumption of prejudice arises. The burden is then upon the party resisting a new trial to demonstrate that the communication did not affect the verdict. If that party meets its burden by showing the communication was harmless, a new trial will not be granted. On the other hand, if that party fails to meet this burden, then the presumption of prejudice must prevail. The supreme court in *State v. Beal* quoted from *Little v. United States*, 73 F.2d 861 (10th Cir.1934):

> "[W]here error occurs which, within the range of a reasonable possibility, may have affected the verdict of a jury, appellant is not required to explore the minds of the jurors in an effort to prove that it did in fact influence their verdict. So to hold would, as a practical matter, take from a defendant his right to a fair trial."

48 N.M. at 94, 146 P.2d 175.

We note that Evid. Rule 606(b) effectively precludes defendant from being able to prove that the communication affected the jury's verdict. Although other jurisdictions have reached a different result, *see* Annot., 54 A.L.R.2d 738 (1957), we believe the presumption of prejudice test meets due process requirements. *See Remmer v. United States*, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954). Moreover, to adopt a different standard depending upon the type of communication would as a practical matter cause confusion.

This presumption, however, is not irrebuttable. *State v. Ho'o*, 99 N.M. 140, 654 P.2d 1040 (Ct.App.1982). Whether the presumption of prejudice has been overcome rests in the sound discretion of the trial court. *State v. Ho'o*. We must determine if the trial court abused its discretion in finding no prejudice.

In Count I of the indictment, and with reference to the "Galaga" video game, defendant was charged with larceny contrary to NMSA 1978, Section 30-16-1 (Repl. Pamp.1984), or, alternatively, with receiving stolen property (retain) contrary to Section 30-16-11, or, alternatively, with receiving stolen property (receive) contrary to Section 30-16-11. Count II, which concerns the "Donkey Kong, Jr." video game, charges defendant with receiving stolen property (dispose) contrary to Section 30-16-11. The jury found defendant guilty of the first alternative to Count I (retain) as to the "Galaga", and guilty of Count II (dispose) as to the "Donkey Kong, Jr." Thus, we are only concerned with possible prejudice as to the "retain" and "dispose" variety of receiving stolen property under Section 30-16-11.

As reconstructed by the juror who prepared the list, the definitions made available were:

control—power; authority; direction
  means of restraint
  have power or authority over; direct
  regulation; management
keep—take care of and protect
  have; hold
  maintain in good condition; maintain
  cause to continue in some stated place, condition, etc.
  retain
  shield; guard
  maintenance; support
possess—own; have
  hold as property; hold; occupy
  control
  maintain; keep

possession—holding
ownership
thing possessed; property

■ The trial court's instruction on the second alternative to Count I, receiving stolen property (receive) required the jury to find beyond a reasonable doubt that defendant "acquired possession of this property * * *." Because the jury acquitted defendant of this charge, we do not concern ourselves with the definitions of "possess" or "possession." Even had the dictionary definition been at variance with the common definition, no prejudice occurred. *See State v. Horton*, 57 N.M. 257, 258 P.2d 371 (1953). Although defendant was found guilty of the "dispose" variety, no definition of that word appears on the list.

The trial court's instruction on receiving stolen property (retain), as to which the jury did find defendant guilty, contains the word "kept." Paraphrased in pertinent part, the instruction required: (1) in order to convict; (2) that the jury find that the "Galaga" had been stolen; (3) that defendant "kept this property," and; (4) that at the time he "kept this property, defendant knew or believed it had been stolen." The list does contain a definition for "keep."

■ The improper reference to the dictionary definitions by some of the jurors did not prejudice defendant. A word used in a statute is to be given its usual and ordinary meaning. *State v. Moss*, 83 N.M. 42, 487 P.2d 1347 (Ct.App.1971). *See also* NMSA 1978, UJI Crim. 1.20 Committee Commentary (Repl.Pamp.1982). In determining whether prejudice exists, cases have considered whether the dictionary definitions varied from words used by the court. *Wilson v. State*, 495 S.W.2d 927 (Tex.Crim.App.1973). Where prejudice has been found to have occurred from use of dictionary definitions, the dictionary definitions varied significantly from the legal definitions of the words. *See, e.g., Gertz v. Bass*, 59 Ill.App.2d 180, 208 N.E.2d 113 (1965); *Holland v. Levine*, 39 Misc.2d 103, 240 N.Y.S.2d 327 (Sup.Ct.1963); *Alvarez v. People*, 653 P.2d 1127 (Colo.1982). The dictionary definitions of "keep" and "control"

did not vary from the usual ordinary meaning of those words, or from the meaning contained in the trial court's instructions.

There was no abuse of discretion.

## 2. Evidentiary Ruling

Defendant claims the trial court abused its discretion in refusing to allow him to again call McGourty, who had previously testified for the state, and to examine that witness, as part of defendant's case, concerning two tape-recorded telephone conversations between defendant and McGourty. This witness's name appeared on the defendant's list of witnesses as well as the state's list.

The tape was played out of the hearing of the jury. It revealed that McGourty owed defendant money for some "hot games" and could be interpreted as showing that he was involved in a "deal" concerning stolen games. Defendant's intention in calling McGourty and questioning him about the taped conversations was to show the following: bias and motive on the part of McGourty; the witness's acquaintance with two other individuals involved, contrary to testimony given earlier; knowledge and complicity of McGourty in the theft and sale of the property, contrary to his denials; and awareness by the witness that the stolen games were purchased by defendant. While we believe defendant may have read more into the tapes than actually exists, still it was sufficiently incriminating of McGourty that the trial court appointed a public defender to represent the witness at the proceedings when the tender was made.

Because defendant had not revealed the existence of the tapes as required, NMSA 1978, Crim.P. Rule 28 (Cum.Supp.1984), the trial court held defense counsel in contempt in lieu of the sanction under NMSA 1978, Crim.P. Rule 30 (Repl.Pamp.1980), but ruled the evidence inadmissible under NMSA 1978, Evid. Rule 403 (Repl.Pamp. 1983) on the bases of confusion, waste of time under that rule, and also improper impeachment. The trial court thought that

defendant should have confronted McGourty with the tapes during cross-examination.

Defendant concedes that *State v. Sanchez*, 87 N.M. 140, 530 P.2d 404 (Ct.App. 1974) provides support for the trial court's rulings, but argues the present case can be distinguished from *Sanchez* on at least two grounds. *Sanchez* holds that the matter of allowing recall and reexamination of a witness who has previously testified is within the trial court's discretion.

Defendant argues that *Sanchez* is different. First, defendant contends that unlike *Sanchez*, the witness he sought to examine was his own witness, whereas in *Sanchez* the witness was called by the prosecution and the defendant in that case was simply trying to further his cross-examination which he could have done earlier. Defendant says that the trial court's ruling denied him the right to present his own case. Under the facts here, that argument does not show an abuse of discretion. We fail to see how the impeachment of McGourty in defendant's case, rather than during the earlier cross-examination, makes a lot of difference in an abuse of discretion analysis. In fact, from the standpoint of trial strategy, one might make a more convincing argument that impeachment of a witness at the time would be far more devastating than later when the evidence is not as fresh.

Second, defendant argues that, unlike *Sanchez*, a "more vital right is at stake—the right against self-incrimination." According to defendant, by holding that he lost his right to impeach the state's chief witness, defendant was forced to choose between impeaching the witness with his own testimony and his constitutional right to refrain from testifying against himself. Because of incriminating evidence in the tape, defendant argues that being forced to choose the second alternative placed him in the position of having to make the state's case, a burden that does not belong to him.

Quite aside from the fact that defendant did not raise this issue below, *see* NMSA 1978, Crim., Child.Ct., Dom.Rel.

& W/C App. Rule 308 (Repl.Pamp.1983), nor cite any authority to support his argument here, we see no merit to this contention. Had defendant been similarly concerned at trial he could have requested the right to reexamine McGourty as part of his presentation. Without agreeing that any fifth amendment is involved, we hold that defendant waived that right by failing to make a timely reservation. *See Sanchez.*

NMSA 1978, Evid. Rule 611 (Repl. Pamp.1983) gives the trial court the right to exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence. The exercise of that control will not be disturbed absent a showing of abuse of discretion. *Padilla v. Hooks International, Inc.,* 99 N.M. 121, 654 P.2d 574 (Ct.App.1982). None has been shown here.

We affirm the convictions.

IT IS SO ORDERED.

WOOD and HENDLEY, JJ., concur.