762 P.2d 250

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Ernie SACOMAN, Defendant–Appellant.**

**No. 17321.**

Supreme Court of New Mexico.

Sept. 27, 1988.

Jacquelyn Robins, Chief Public Defender, Susan Gibbs, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

Hal Stratton, Atty. Gen., Anthony Tupler, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

RANSOM, Justice.

This is an appeal by defendant Ernie Sacoman from his conviction of first degree murder in which a sentence of life imprisonment has been imposed. Sacoman complains of (1) juror misconduct, (2) denial of discovery of psychological records of a key prosecution witness, and (3) admission of a prior juvenile delinquency adjudication. We affirm.

Sacoman was charged with murder, armed robbery, conspiracy to commit each of those offenses, and tampering with evidence, all arising from the killing of Brian Martinez on February 17, 1986. The first trial ended in a mistrial with a hung jury. Upon retrial, Sacoman was convicted of all charges and moved for a new trial based on allegations of juror misconduct. Following two hearings, the motion for new trial was denied. We first will review the evidence necessary for an understanding of the juror misconduct issue.

The bedroom of one Michael Donald was known, by young adult men who frequented it, as "the dungeon." Life in the dungeon involved drinking and drugs. Sacoman shared the dungeon with Donald. Others who visited the dungeon included trial witnesses Ian Dewing, Beau Mantai and Scott Bloemker.

Donald and Dewing originally were charged as codefendants in the crimes stemming from the killing, but they were allowed to plead guilty to lesser charges in return for their testimony against Sacoman. They testified that they enlisted Sacoman as the driver of a car to be used in a planned robbery of Martinez during a drug purchase on the Albuquerque east mesa the afternoon of Monday, February 17. In the course of the robbery, which progressed not at all as planned, Sacoman grabbed Donald's small caliber rifle from the back seat and jumped out of his car. He fired the rifle, hitting Martinez whom he had ordered from the Martinez car. Sacoman then chased Martinez, firing another shot. He came back to the Martinez car and took a larger caliber pistol belonging to Martinez, and with this pistol Sacoman shot Martinez in the head.

Sacoman asserted an alibi defense. He testified that on Monday, at the time of the killing, he was at his job as a busboy at the Classic Hotel. Work records showed that he had "clocked in" at 7:48 a.m. and had not "clocked out," but was paid as if he had clocked out at 2:47 p.m., the end of his shift.

Sacoman's supervisor testified that no employee is permitted to leave before the end of the shift without checking with the cashier or hostess, that she did not recall Sacoman leaving early on that Monday, and

that if an employee fails to clock out, the payroll clerk checks with the cashier to determine when that employee left. The supervisor further stated that in such circumstances the payroll clerk has to verify when the employee departed and cannot "just take their word for it." She also testified that she had supervised Sacoman, and that although sometimes he was tardy, she never had a problem with him "cutting out early."

A waitress testified that the hotel's policy on failing to sign out and to check out is "very stringent." She "got in trouble a few times [herself]" for failing to do both because "they frowned on it heavily." If an employee is absent for as much as fifteen minutes it causes "too much of a problem," and someone begins to look for the missing person. If an employee fails to punch out, the time of departure has to be verified with another employee.

In rebuttal, the State called another waitress who testified that Sacoman told her that he planned to leave early to meet his girlfriend for lunch. She thought that he would be coming back, but he didn't and "they missed a busperson that day." She also stated that one busboy (of two) was present until the end of the shift on Monday. The work records showed that the other busboy was only paid for six hours that day, suggesting that he rather than Sacoman left early.

At the hearings on the motion for a new trial, it was established that one juror injected his personal expertise as a busboy into the deliberations, relating that on many occasions when he wanted to take off work early he would work extra hard, make sure his tasks were accomplished, and then leave without punching out. He would argue with management the next day as to the number of hours he should be paid. These statements arguably contradicted the testimony presented at trial.

Another juror injected into the jury deliberations a fabricated story to the effect that over the weekend, intervening between the beginning and conclusion of jury deliberations, she had gone skiing with the payroll clerk of a Santa Fe hotel. In the process of making out the payroll, the clerk commented that it looked like someone had not clocked out but that she assumed that the person had worked and she went ahead and gave the person the benefit of the doubt. At the initial hearing on the motion for a new trial, this latter juror perjured herself by reiterating her story, but she then contacted the trial judge and told him her testimony was untrue. She admitted concocting the story about the Santa Fe hotel and her friend's paperwork. The juror explained to the judge that she had failed to reveal her fabrication at the hearing because of fear of publicity and because she did not want to be responsible for Sacoman getting off or going free.

We begin our analysis by determining whether statements made by the two jurors to their fellow jurors constituted extraneous information, improperly brought to the jury's attention. *See State v. Doe*, 101 N.M. 363, 683 P.2d 45 (Ct.App.1983), *cert. denied*, 101 N.M. 276, 682 P.2d 61 (1984). SCRA 1986, 11–606(B) specifically provides that, upon inquiry into the validity of a verdict, a juror may testify on the question of whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. *See Doe*, 101 N.M. at 365, 683 P.2d at 47; *Duran v. Lovato*, 99 N.M. 242, 656 P.2d 905 (Ct.App.1982), *cert. denied*, 99 N.M. 226, 656 P.2d 889 (1983). We are not dealing with an improper attempt to explain the verdict of the jury. *See Biebelle v. Norero*, 85 N.M. 182, 510 P.2d 506 (1973).

■ *Extraneous information.* Communication of specific knowledge from a particular juror to others involves extraneous information. *See State v. Thacker*, 95 Nev. 500, 596 P.2d 508 (1979) (per curiam) (in reaching verdict, jurors are confined to facts and evidence elicited during trial). Defendant asserts that the communications by the two jurors regarding restaurant procedures for paying employees who fail to clock out constituted extraneous information. He relies upon the following cases to support his argument. *See State v. Larue*,

722 P.2d 1039 (Haw.1986) (juror's communication of personal experience similar to victim's sexual abuse held reversible error); *State v. Wisham,* 384 So.2d 385 (La.1980) (two jurors see defendant's alibi witness arrested in courthouse hallway for perjury); *Rogers v. State,* 551 S.W.2d 369 (Tex. Crim.App.1977) (juror, once victim of robbery, tells jury "you never forget a face" in robbery case involving eyewitness identification); *State v. Lorenzy,* 59 Wash. 308, 109 P. 1064 (1910) (statement made by juror in jury room regarding his personal knowledge that particular hotel was in fact house of prostitution). Moreover, a new trial may result because of the receipt of evidence not admitted at trial, even though under the circumstances of the case no misconduct occurred that resulted in the additional knowledge. *Farese v. United States,* 428 F.2d 178 (5th Cir.1970).

In *Thacker,* the defendants stood accused of the larceny of two calves. At trial, they asserted that the calves seized from them by authorities were not the same calves that had been stolen, based on differences in weight and age. During deliberations, a juror, who worked as the foreman of a cattle ranch, made estimates regarding the weight of the cattle that contradicted the theory of defense. Holding these estimates constituted extraneous prejudicial information that tainted the verdict, the Nevada Supreme Court granted a new trial. 95 Nev. at 501, 596 P.2d at 509.

In *People v. Huntley,* 87 A.D.2d 488, 452 N.Y.S.2d 952 (1982), a juror told others that he had visited the scene of the alleged crime, and he corroborated the State's version of events. At the hearing on the motion for a new trial, the juror admitted that he did not visit the scene but rather reconstructed these "facts" from the trial testimony. The court held that the story about visiting the scene, whether or not fabricated by the juror, turned the juror into an unsworn witness against the defendant and served to deny him due process of law. The court stated:

> Most certainly jurors are not precluded from drawing on their wisdom and experience and engaging in a free exchange of ideas and subjective opinions during

the course of their deliberations. * * * * The point, however, is that such deliberations must take their content from the record facts before them, not from external facts brought into the jury room by a juror and thus not screened through the judicial process.

87 A.D.2d at 492, 452 N.Y.S.2d at 955.

■ The defendant's authorities convince us that he is correct in asserting that the juror communications at issue in this case constituted extraneous information.

*Information improperly brought to jury's attention.* Furthermore, it is undisputed that these communications were received by other jury members during deliberations. The jury is specifically instructed that:

> You must decide the case solely upon the evidence received in court. You must not consider anything you may have read or heard about the case outside the courtroom. During the trial and your deliberations, you must avoid news accounts of the trial, whether they be on radio or television or in the newspaper or other written publications. You must not visit the scene of the incident on your own. You cannot make experiments with reference to the case.

SCRA 1986, 14–101. It is clear that this extraneous information was brought improperly to the jury's attention.

*Presumption of prejudice.* In *Doe,* the court held that if a party makes a showing that material extraneous to the trial actually reached the jury and if there is a reasonable possibility the material prejudiced the defendant, the trial court should grant a new trial. 101 N.M. at 366, 683 P.2d at 48. Further, we agree with the court in *People v. Martinez,* 82 Cal.App.3d 1, 147 Cal.Rptr. 208 (1978), that extraneous information creates a presumption of prejudice that may be rebutted by showing that no prejudice actually occurred. *Id.* at 21, 147 Cal.Rptr. at 220; *see also State v. Melton,* 102 N.M. 120, 123, 692 P.2d 45, 48 (Ct.App.1984), *cert. denied,* 102 N.M. 412, 696 P.2d 1005 (1985); *Doe,* 101 N.M. at 367, 683 P.2d at 49. The contradiction of an asserted de-

fense was identified in *Martinez* as a factor constituting prejudice which requires that the conviction be reversed. 82 Cal.App.3d at 22, 147 Cal.Rptr. at 220.

■ *Trial court reasonably found presumption of prejudice was overcome.* We do not reach the question of whether information about restaurant procedures for paying employees who fail to clock out contradicted Sacoman's asserted alibi defense. We assume that it was intended by the informants to have that effect. Rather, we hold that the trial court reasonably exercised discretion in finding that the extraneous information was not prejudicial because of the stage the deliberations had reached at the time both statements were made and because of the limited degree to which such statements were discussed by other jurors. *See Melton,* 102 N.M. at 123, 692 P.2d at 48. "Whether the presumption of prejudice has been overcome rests in the sound discretion of the trial court." *Id.* The record reveals substantial evidence to support the trial court's finding that there was no prejudice, based upon juror testimony received during hearings on the motion for a new trial and upon the affidavit of the jury foreperson.

The cases relied upon by Sacoman to argue that the State failed to rebut the presumption of prejudice are distinguishable on their facts. Those decisions involved situations where the injection of the extraneous evidence occurred during a stage in the deliberations when the relevant issue was yet to be resolved. *See, e.g., United States v. Howard,* 506 F.2d 865 (5th Cir.1975); *Bobo v. State,* 254 Ga. 146, 327 S.E.2d 208 (1985); *People v. Brown,* 48 N.Y.2d 388, 399 N.E.2d 51, 423 N.Y.S.2d 461 (1979); *People v. Huntley,* 87 A.D.2d 488, 452 N.Y.S.2d 952 (1982); *State v. Poh,* 116 Wis.2d 510, 343 N.W.2d 108 (1984).

In its initial deliberations on Friday afternoon, the jury preliminarily had decided by a vote of 11–1 that Sacoman was on the east mesa at the scene of the killing rather than at work. The first thing Monday morning when deliberations were resumed the lone dissenting juror indicated without

prompting or other discussion that, over the course of the weekend, she also had concluded that the defendant was on the east mesa. Deliberations then ensued on the other aspects of the case. The extraneous information was volunteered in the course of these deliberations.

If the court determines that extraneous information reached the jury, the court must inquire into prejudice. *State v. Gutierrez,* [78 N.M. 529, 433 P.2d 508 (Ct.App.1967)]. Relevant inquiries include how the material was received, how long it was available to the jury, the extent to which the jury discussed the material, whether they considered it before they reached a verdict or after, and, if before, at what point in the deliberations they received the material. *United States v. Castello,* [526 F.Supp. 847 (W.D.Tex.1981)]. The strength of the State's case has a bearing on the issue of prejudice. *United States v. Bassler,* [651 F.2d 600 (8th Cir.1981)].

*Doe,* 101 N.M. at 366–67, 683 P.2d at 48–49. In addition to the testimony of the two codefendants, we note that the State's case was strengthened by the testimony of Mantai and Bloemker that on Tuesday afternoon, following the Monday killing, Mantai, Bloemker, Donald, and perhaps Dewing were in the dungeon when Sacoman physically reenacted how he committed the fatal shooting.

*Juror disqualification.* In addition to claiming prejudice from the two instances of extraneous information improperly brought to the jury's attention, Sacoman claims that the woman juror's deception showed her bias and disqualification as a juror, first in fabricating a story and telling it to the jury, and then in perjuring herself under oath regarding that story during the initial hearing on the motion for a new trial. In this regard, we note initially that this is not an issue governed by those decisions that turn upon whether prejudice has resulted from a juror's misleading responses to questions posed during voir dire. *See McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.

2d 663 (1984); *United States v. Perkins,* 748 F.2d 1519 (11th Cir.1984).[1]

 We recognize that there can be occasions where a juror's misconduct prejudices defendant's constitutional right to a fair trial. *See People v. Pierce,* 24 Cal.3d 199, 595 P.2d 91, 155 Cal.Rptr. 657 (1979) (in bank); *State v. Larue,* 722 P.2d 1039 (Haw.1986). A defendant in a criminal trial is entitled to a fair and impartial jury. U.S. Const. amend. VI; N.M. Const. art. II, § 14. An impartial jury means a jury where every juror is free from any partiality whatsoever. *Mares v. State,* 83 N.M. 225, 490 P.2d 667 (1971). The fundamental right to an impartial jury is violated when one juror is unqualified for the reason that any verdict would thus be less than the unanimous verdict of twelve. *State v. Gallegos,* 88 N.M. 487, 542 P.2d 832 (Ct. App.), *cert. denied,* 89 N.M. 6, 546 P.2d 71 (1975).

*Larue* involved a case concerning charges of rape and sexual abuse. The jury foreperson failed to disclose during voir dire that she had been the victim of child sexual abuse. At the trial, a pivotal question was the reliability of the three minors' statements regarding their alleged sexual molestation by the defendant. During deliberations, the foreperson vouched for the reliability of the victims' testimony by recalling her personal experience and relating that she was able to remember being molested as a small child.

> We do not doubt that [the foreperson's] * * * failure to reveal that experience and recollection during voir dire was innocent, and inadvertent. The fact, however, that she brought it out to the other jurors during deliberation makes clear that her judgment on the issue was based on the particular incident in her own past ... she therefore was not, in this case, impartial.

*Larue,* 722 P.2d at 1042.

In *Pierce,* a juror vowed that he could remain impartial and, in particular, that he would refrain from conversing about the trial outside the courtroom, despite the fact that he was a close personal friend of a policeman who had investigated the case and who would be a prosecution witness. Following the close of the State's case, the juror, nevertheless, went to his policeman friend's home and questioned him about critical aspects of the trial.

On motion for a new trial, evidence was adduced that the other eleven jurors had declared that at no time during the trial or deliberations did this juror mention any information other than that presented in court. This evidence, however, could not rebut the presumption that the twelfth juror was not impartial. "Because a defendant charged with a crime has a right to the unanimous verdict of 12 impartial jurors * * * it is settled that a conviction cannot stand even if a single juror has been improperly influenced." 24 Cal.3d at 208, 595 P.2d at 96, 155 Cal.Rptr. at 662 (citations omitted).

 Defendant, however, misplaces his reliance upon *Larue* and *Pierce* to support his claim of juror disqualification. Whether a juror's misconduct rises to such a level as to indicate his or her disqualification is a fact question to be determined by the trial court. At the second hearing on the motion for a new trial, the defendant argued in depth that because this woman juror had fabricated a story and had perjured herself during the initial hearing on the motion for a new trial, her dishonesty disqualified her as a juror. The trial judge did not accept that argument and, unless his ruling was unreasonable, we will not disturb his decision. The record supports the reasonableness of his ruling. Here, the juror's misconduct could be found to be motivated only by her appraisal of the evidence heard at trial, and her desire for peer recognition. Bearing in mind that we have found already that her fellow jurors were unaffected by her comments in their deliberations, we are loath to recognize attention-seeking

---

1. Because the voir dire transcript is absent from the record, we, in any event, would be precluded from ascertaining whether this woman was biased or prejudiced when she was selected and qualified to sit on the jury. *See State v. Maes,* 81 N.M. 550, 555–56, 469 P.2d 529, 534–35 (Ct. App.1970) (voir dire transcript not in appellate record to establish claim of concealed bias).

**594**

conduct as disqualifying for juror participation. Unlike in *Larue* and *Pierce*, this juror's misconduct is not clearly the product of personal experience or the gathering of extraneous information that would disqualify her from serving and deliberating as one of the twelve-person jury.

■ *Psychological records.* With respect to the court's denial of Sacoman's motion for production of Dewing's psychological records, we note that, in limine, defense counsel suggested alternatively that the records be produced to the court for *in camera* inspection. The court accepted this suggestion and ordered the psychological records produced for *in camera* review to be followed by a separate hearing if the court saw anything deemed relevant. Except for the order subsequently entered by the court denying disclosure, the record is devoid of further reference to the psychological records. Sacoman has preserved no error, if error there be. Because the psychological records were not designated as part of the exhibits for this appeal, they are not before this Court for review to determine if the trial court correctly denied access to them. *See* SCRA 1986, 12–212; *State v. Hoxsie*, 101 N.M. 7, 9, 677 P.2d 620, 622 (1984) (burden on appellant to designate pertinent exhibits as part of record on appeal).

■ *Juvenile delinquency adjudication.* With respect to admission of a juvenile delinquency adjudication, Sacoman was asked, "Why did you leave Manzano High School?" His answer to virtually the same question at the first trial was simply that it was for giving cocaine to a friend. It was well within the discretion of the trial court to admit the act of distributing cocaine to a friend at high school as rebuttal to Sacoman's theory that he was merely on the periphery of the individuals involved in this case, and their drug activities. The determination of relevancy is a matter within the sound discretion of the trial court. *State v. Larson*, 107 N.M. 85, 752 P.2d 1101 (Ct.App.), *cert. denied*, 107 N.M. 74, 752 P.2d 789 (1988); *State v. Bowman*, 104 N.M. 19, 715 P.2d 467 (Ct.App.1986). It is proper for the State to correct a false impression generated by the defendant. *State v. Bazan*, 90 N.M. 209, 561 P.2d 482 (Ct.App.), *cert. denied*, 90 N.M. 254, 561 P.2d 1347 (1977).

■ When, in response to the question asking why he left high school, defendant volunteered at his second trial that he had spent time in the detention center because his parents wanted him to learn a lesson, the error, if any, was his own. The only objection was to relevancy. Further, the trial court was not asked to strike the nonresponsive answer or to otherwise caution the jury regarding the purpose of such testimony. There was no objection on the grounds that this specific instance of conduct was inadmissible concerning character for untruthfulness. *See* SCRA 1986, 11–608(B). These matters are raised for the first time on appeal, and will not be considered. *See* SCRA 1986, 12–216; *Wolfley v. Real Estate Comm'n*, 100 N.M. 187, 668 P.2d 303 (1983).

The judgment of the trial court is affirmed in its entirety.

IT IS SO ORDERED.

SOSA, Senior Justice, and STOWERS, J., concur.