1997-NMCA-102

947 P.2d 168

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Salvador RIVERA, Defendant–Appellant.**

**No. 17750.**

Court of Appeals of New Mexico.

Sept. 9, 1997.

Tom Udall, Attorney General, Elizabeth Blaisdell, Asst. Attorney General, Santa Fe, for Plaintiff–Appellee.

Leon F. Encinias, Albuquerque, for Defendant–Appellant.

## OPINION

PICKARD, Judge.

1. Defendant appeals his conviction for aggravated driving while intoxicated contrary to NMSA 1978, Sections 66–8–102(A) & (D)(1) (Repl.Pamp.1994). He raises two issues. First, he contends that the evidence was insufficient to sustain the conviction because (a) there was insufficient evidence that he was driving and (b) there was insufficient evidence of the level of intoxication required to aggravate the offense. Second, he contends that a new trial must be ordered because extraneous prejudicial information in the form of the televised O.J. Simpson verdict reached the jury during its deliberations. We affirm.

## SUFFICIENCY OF THE EVIDENCE

2. Defendant was found either unconscious or asleep at the wheel of his car in the front yard of his house; the car's engine was racing. An officer woke Defendant, but did not attempt to have Defendant perform field sobriety tests because Defendant could not even stand up by himself. Defendant's breath alcohol tests were incomplete because he did not provide sufficient samples. Nonetheless, they indicated readings of .24 and .27. There was testimony that the readings would have been higher had the samples been sufficient.

3. Defendant contends that there was insufficient evidence of driving because his wife testified that he liked to sit in the car and listen to the radio. However, such testimony does not negate the required element of driving, which is defined as being in actual physical control of the vehicle. See State v. Tafoya, 123 N.M. 665, 666, 944 P.2d 894, 895 (Ct.App.1997); State v. Harrison, 115 N.M. 73, 75–76, 846 P.2d 1082, 1084–85 (Ct.App. 1992). The evidence in this case was comparable to that in Harrison, and we therefore determine that Harrison controls.

4. Defendant also contends that there was insufficient evidence of intoxication because (1) there were no field sobriety tests and (2) the breath test results were invalid because (a) there was an insufficient sample and (b) Defendant was not under continuous observation for the twenty minutes required by state regulations. During part of the twenty-minute period, Defendant was in the back seat of the officer's vehicle being transported to the detention center. The officer did not continuously observe Defendant because the officer was driving.

5. We review the evidence in the light most favorable to the State and indulge in all permissible inferences to support the judgment below. See State v. Apodaca, 118 N.M. 762, 766, 887 P.2d 756, 760 (1994). We cannot reweigh the evidence or substitute our judgment for that of the jury. See id. When the evidence is viewed in the proper manner, it is apparent that Defendant's contentions go to the weight of the evidence. The officer explained why no field sobriety tests were given: Defendant was too incapacitated to take them. There was testimony that the insufficient sample did not make the test invalid; it more likely made the sample read lower than Defendant's alcohol level actually was. There was also testimony that sitting in a car with a defendant could satisfy the twenty-minute period because the purpose of the observation period is to insure that a defendant does nothing to compromise the test. This purpose was satisfied. We therefore hold that there was sufficient evidence to sustain the conviction.

## EXTRANEOUS PREJUDICIAL INFORMATION

6. The jury began deliberating shortly before 4:00 p.m. on October 2, 1995. At 5:00, the jurors went home for the evening. The jurors returned to deliberate the next day and at 1:10 p.m. returned a verdict. At approximately 11:00 a.m. on the second day of deliberations, during a break in the deliberations, many of the jurors watched the return of the verdict in the O.J. Simpson case. The question raised by this issue is whether watching the televised O.J. Simpson verdict was such extraneous information that a presumption of prejudice arose which the

State was required to rebut, failing which a new trial must be granted. *See State v. Sacoman,* 107 N.M. 588, 591–92, 762 P.2d 250, 253–54 (1988). We hold that it is not.

7. In all of the cases on which Defendant relies, the information that reached the jury, which the courts held gave rise to a presumption of prejudice, was related to the case being tried. *See Sacoman,* 107 N.M. at 590–91, 762 P.2d at 252–53 (when the defendant's alibi was established with reference to punching out on a time clock, jurors' relation of their personal experiences with time clocks was extraneous information giving rise to presumption of prejudice); *State v. Beal,* 48 N.M. 84, 86–95, 146 P.2d 175, 177–182 (1944) (at a time when New Mexico law did not routinely permit exhibits and instructions to be given to the jury during their deliberations, presence of both exhibits and instructions gave rise to presumption of prejudice which state did not rebut); *Hurst v. Citadel, Ltd.,* 111 N.M. 566, 570–71, 807 P.2d 750, 754–55 (Ct.App.1991) (bailiff's erroneous statement to jury that it was too late to send note to court asking for further clarification of law of comparative negligence was extraneous information giving rise to presumption of prejudice); *Prudencio v. Gonzales,* 104 N.M. 788, 789–90, 727 P.2d 553, 554–55 (Ct. App.1986) (when bailiff was known by jurors to have relationship with the defendants, bailiff's comments to jurors in attempt to influence their verdict was extraneous prejudicial information); *State v. Melton,* 102 N.M. 120, 123, 692 P.2d 45, 48 (Ct.App.1984) (when trial court refused jury's request for dictionary, one juror's consultation of dictionary and relation of dictionary definitions to rest of jury amounted to extraneous information giving rise to the presumption); *State v. Doe,* 101 N.M. 363, 365–66, 683 P.2d 45, 47–48 (Ct.App.1983) (story of intimidation of a witness who identified defendant may have reached jury; court erred in not permitting inquiry into it because it would have been extraneous prejudicial information); *Budagher v. Amrep Corp.,* 100 N.M. 167, 168, 172, 667 P.2d 972, 973, 977 (Ct.App.1983) (court's allowing jury to deliberate with plaintiffs' requested instructions without defendants' defenses was extraneous information giving rise to presumption); *Duran v. Lovato,* 99 N.M. 242, 248, 656 P.2d 905, 911 (Ct.App. 1982) (in auto accident case, jurors' independent speed tests, if they occurred, would be extraneous prejudicial information).

8. In contrast, in this case, the extraneous information did not relate to the case. Whether Simpson would be found guilty was a matter that held the interest of the American public, just as "who shot J.R.?" did or just as whether Neil Armstrong would actually set foot on the moon did. There are a host of news or entertainment stories that hold the public interest. These matters are not within the prohibition on jurors listening to them or reading them. The admonition contained in the uniform jury instructions does not mention other news stories, even about other court cases. It states in relevant part:

> You must decide the case solely upon the evidence received in court. You must not consider anything you may have read or heard about the case outside the courtroom. During the trial and your deliberations, you must avoid news accounts of the trial, whether they be on radio or television or in the newspaper or other written publications. You must not visit the scene of the incident on your own. You cannot make experiments with reference to the case.

> Until you retire to deliberate the case, you must not discuss this case or the evidence with anyone, even with each other.

NMUJI 14–101 NMRA 1997.

9. We agree with the statements of the Indiana Supreme Court, writing in a similar situation: " 'It is unrealistic and impossible to expect or require that a jury be a laboratory completely sterilized and freed from all external factors.' " *Pulliam v. State,* 264 Ind. 381, 345 N.E.2d 229, 234 (1976) (quoting *Lindsey v. State,* 260 Ind. 351, 295 N.E.2d 819, 823 (1973)). In *Pulliam,* the defendants contended that the jury was prejudiced by a newspaper article about a jury in another case. That jury, the paper reported, was chastised for being deadlocked. The paper further quoted the judge in that case as saying that a stubborn juror had wasted a good deal of taxpayer time and money. The

defendants contended that this article could have prejudiced their jury. The Indiana court disagreed, noting that the article did not concern the defendants or their case; it did not concern their judge; and it did not concern a similar crime. *See id.* The same must be said here.

10. Defendant contends that some percentage of New Mexicans viewed the acquittal of Simpson as an injustice, and therefore the televised verdict may have persuaded his jury to convict him. Although we agree with Defendant that it may have been preferable from the standpoint of the seriousness and the dignity befitting jury deliberations that the jury should not have been allowed to watch television during breaks in their deliberations, we cannot agree with Defendant's basic proposition. That proposition is that there are *certain items of information, apart from anything concerning Defendant's case or Defendant's trial or Defendant's crime,* that should create a presumption of prejudice if the jury received them.

11. Rather, we agree with the State that it is sheer speculation to suppose that the Simpson verdict affected the jury at all, any more than the jurors' choice of what to have for lunch or their viewing of television in the evenings during the trial would have affected them. As the State argues, "[a]ll unsequestered jurors receive unrelated outside information during the course of their deliberations, and it would be an unreasonable burden on the court system to be required automatically to presume prejudice and put the state to the burden of disproving prejudice from every piece of unrelated information received by the jurors."

12. Because the viewing of the return of the Simpson verdict did not violate any of the court's admonitions or instructions and because the Simpson case had nothing whatsoever to do with this case, we hold that Defendant is not entitled to a new trial. We limit the rule concerning extraneous information to that information that relates more directly to the case under consideration. *Compare People v. Budzyn,* 456 Mich. 77, 566 N.W.2d 229 (1997) (murder conviction of white police officer accused of beating black man about the head with flashlight reversed when ju-

rors watched videotape of movie "Malcolm X" near the end of trial) *with* W.R. Habeeb, Annotation, *Permitting jurors to attend theater or the like during course of criminal trial as ground for mistrial, new trial or reversal,* 32 A.L.R.2d 847, 850–51 (1954) (stating general rule that it is not reversible error for jurors to view extraneous entertainment unless there is something peculiar about the entertainment that might bear upon the case they are then trying). There being nothing peculiar about the Simpson case that would bear on this DWI case, we believe that no presumption of prejudice arose.

CONCLUSION

13. Defendant's conviction is affirmed.

14. **IT IS SO ORDERED.**

ALARID and BUSTAMANTE, JJ., concur.