**In re the ORGANIZATION OF the UPPER BEAR CREEK SANITATION DISTRICT, Jefferson and Clear Creek Counties, Colorado.**

**The BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF CLEAR CREEK, Appellant,**

**v.**

**The UPPER BEAR CREEK SANITATION DISTRICT, nee the Upper Bear Creek Metropolitan District, Petitioner-Appellee.**

**No. 82CA1131.**

Colorado Court of Appeals,
Div. III.

Sept. 22, 1983.

Rehearing Denied Dec. 15, 1983.

Certiorari Granted June 11, 1984.

Hannon, Stutz, Dyer & Millter, Steven M. Hannon, Jeremiah B. Barry, Georgetown, for appellant.

Robert J. Flynn, Englewood, for petitioner-appellee.

TURSI, Judge.

This appeal is brought by the board of county commissioners of Clear Creek County (County) challenging the district court's order reforming the Upper Bear Creek Sanitation District (District) into a metropolitan district. We reverse.

The facts are undisputed. The Upper Bear Creek Sanitation District was organized pursuant to a decree of the Jefferson County District Court in 1977. The District encompasses parts of both Jefferson and Clear Creek Counties. The petition, as required by the Special District Control Act, § 32-1-201, et seq., C.R.S.1973, stated that a service plan had been approved by resolution of the board of county commissioners of both counties.

On March 10, 1981, the District, prompted by a desire to provide water service to an area within Jefferson County, adopted a resolution to change the sanitation district into a metropolitan district. The District submitted a modified service plan to the boards of county commissioners of Jefferson and Clear Creek Counties. Jefferson County approved the plan, but Clear Creek County rejected it. Failing to obtain the County's approval of the proposed service plan, the District petitioned the district court for an order declaring it a metropolitan district based upon its board's resolution. *See* § 32-1-1006(2), C.R.S.1973 (1982 Cum.Supp.). The district court, although finding that the County had rejected the proposed service plan, held that § 32-1-1006(2) had been satisfied, and decreed that the Upper Bear Creek Sanitation District would henceforth be a Metropolitan District, possessing all of the rights, powers, and authority of such a metropolitan district.

The County appealing this holding contends that its approval of the proposed service plan is a condition precedent to granting a petition changing a sanitation district into a metropolitan district. We agree.

I

The issue to be resolved is the relationship between the 1965 Special District Control Act, § 32-1-201, et seq., C.R.S.1973, and the Metropolitan Districts Act of 1947, § 32-3-101 et seq., C.R.S.1973. The provisions of both acts have been repealed and reenacted effective July 1, 1981, in the Special District Act, §§ 32-1-101 through 32-1-1307, C.R.S.1973 (1982 Cum.Supp.). The relevant statutory provisions were not affected by the reenactment in 1981. The petition was filed with the trial court after the Special District Act became effective. Therefore, all statutory references will be to the Special District Act of 1981.

The statute allowing a sanitation district to petition a district court for a decree changing it to a metropolitan district is § 32-1-1006(2). This statutory provision was originally enacted in 1947. The statute states in pertinent part:

"A special district organized for water or sanitation or for water and sanitation purposes, upon the filing of a resolution of the board with the court, *may* become a water and sanitation or metropolitan district, respectively, possessing all the rights, powers, and authority of such a district if there is not then pending a petition for the organization of a water

and sanitation or metropolitan district ...." (emphasis added)

The District contends that this statutory provision, by and of itself, provides a means by which a sanitation district can become a metropolitan district.

The County contends that §§ 32–1–201 through 32–1–207 were intended by the General Assembly to apply to all proposed special districts. The County contends that the statutes pertaining to service plan approval were intended to supplement the provisions found in § 32–1–1006(2).

Section 32–1–202(1), C.R.S.1973 (1982 Cum.Supp.) provides in pertinent part:

"Persons proposing the organization of a special district shall submit a service plan to the board of county commissioners of each county which has territory included within the boundaries of the proposed special district prior to filing a petition for the organization of the proposed special district in any district court."

Section 32–1–205(2), C.R.S.1973 (1982 Cum.Supp.) provides:

"Except as provided in § 32–1–206, no petition for the organization of a special district shall be considered by any court in this state without the resolution of approval and the service plan required by [§§ 32–1–201 through 32–1–207]."

If the proponents fail to secure approval of the proposed service plan, judicial review of the county's refusal on the grounds that it acted arbitrarily, capriciously, or unreasonably is available in the organizational county. Section 32–1–206(1).

■ The relevant query then is whether changing from a sanitation district to a metropolitan district is the organization of a special district within the requirements of §§ 32–1–201 through 32–1–207. We hold that such a procedure does constitute the organization of a new and different special district, and therefore, approval of the service plan by the boards of county commissioners of all counties within the District's boundaries is required.

Though both sanitation districts and metropolitan districts fall within the definition of a special district, § 32–1–103(20), C.R.S. 1973 (1982 Cum.Supp.), a sanitation district is limited to sewer and drainage matters, § 32–1–103(18), C.R.S.1973 (1982 Cum. Supp.), while a metropolitan district can provide up to nine listed services, including sanitation and water, § 32–1–103(10), C.R. S.1973 (1982 Cum.Supp.).

■ The change from a sanitation district to a metropolitan district is not merely a mechanical name change, but rather is a complete reorganization of a municipal body. Thus, the provisions of § 32–1–201, et seq., C.R.S.1973 (1982 Cum.Supp.) must be harmonized with § 32–1–1001, et seq., C.R.S.1973 (1982 Cum.Supp.).

■ Three principles guide our statutory construction. First, statutes which are pari materia must be construed together reasonably to effect legislative intent. Second, if two statutes concerning the same subject matter are inconsistent, the latter in time prevails to the extent of the inconsistency. Finally, statutes must be construed as a whole reasonably to effect legislative intent evidenced by the entire statutory scheme. *Public Employees' Retirement Ass'n v. Greene*, 195 Colo. 575, 580 P.2d 385 (1978).

Section 32–1–102(2) states that the procedures contained in §§ 32–1–201 through 32–1–207 are:

"necessary for the coordinated and orderly creation of special districts and *for the logical extension of special district services throughout the state.* It is the purpose of [§§ 32–1–201 through 32–1–207] *to prevent unnecessary proliferation and fragmentation of local government and to avoid excessive diffusion of local tax sources.*" (emphasis added)

■ Based on the express legislative declaration, coupled with the statutory construction principles enumerated above, we hold that the General Assembly intended that petitions filed pursuant to § 32–1–1006(2) be accompanied by appropriate service plans approved by the board of county

**64**

commissioners of all counties within the district.[1] To hold otherwise would render the legislative intent ineffectual in regard to such petitions filed pursuant to § 32–1–1006(2). *See In re Estate of Plich,* 141 Colo. 425, 348 P.2d 706 (1960). Requiring an approved service plan for such petitions is the check which the General Assembly imposed to avoid proliferation of districts and the incident burden upon taxpayers. And, in this way the residents of the county are protected from an unwanted change of the existing district's power and authority.

II

The District also contends that the County has no standing to attack the trial court's decree as such an attack can only be brought by the Attorney General in a quo warranto action as provided for in § 32–1–305(7), C.R.S.1973 (1982 Cum. Supp.). We disagree.

Section 32–1–305(7) concerns special district organization by election. Though a quo warranto action by the Attorney General is the exclusive method of attacking an order declaring a special district organized if an organizational election is utilized, here, the statute is inapposite. Statutory language is to be interpreted in the context of the entire statute. *People ex rel. Dunbar v. Trinidad State Junior College,* 184 Colo. 305, 520 P.2d 736 (1974). The County is properly before this court as an interested and aggrieved party pursuant to §§ 32–1–203, 32–1–206, 32–1–207, and 32–1–1201, C.R.S.1973 (1982 Cum.Supp.). *See also Tower v. Tower,* 147 Colo. 480, 364 P.2d 565 (1961).

The trial court erred in granting the District's petition to become a metropolitan district without prior approval of the service plan by all affected counties.

The judgment of the trial court is reversed with directions to vacate the order reforming the district.

BERMAN and KELLY, JJ., concur.

**1.** Consistent with this intent is the 1983 amendment to § 32–1–1006(2). Colo.Sess.Laws 1983, ch. 372, at 1280.