The **UPPER BEAR CREEK SANITATION DISTRICT**, nee the Upper Bear Creek Metropolitan District, Petitioner,

v.

The **BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF CLEAR CREEK**, Respondent.

No. 84SC23.

Supreme Court of Colorado,
En Banc.

March 17, 1986.

Robert J. Flynn, Englewood, for petitioner.

Steven M. Hannon, Georgetown, for respondent.

Collins & Cockrel, P.C., Paul R. Cockrel, Denver, for amicus curiae West Jefferson County Metropolitan Dist.

Calkins, Kramer, Grimshaw & Harring, Matthew R. Dalton, Susan E. Burch, Denver, for amicus curiae Willow Brook Metropolitan Dist.

KIRSHBAUM, Justice.

We granted certiorari to review the decision in *Board of County Commissioners v. Upper Bear Creek Sanitation District*, 682 P.2d 61 (Colo.App.1983), in which the Court of Appeals reversed the district court's order granting the petition of Upper Bear Creek Sanitation District (the District) to become a metropolitan district. We affirm, although for reasons other than those stated by the court.

The pertinent facts are undisputed. The District, located in parts of both Jefferson and Clear Creek Counties, was organized in 1978 under a decree of the Jefferson County District Court. The District was formed pursuant to the then-extant statutory provisions concerning the organization of sanitation districts, §§ 32-4-101 to -140, 13 C.R.S. (1973), and the "Special District Control Act," §§ 32-1-201 to -209, 13 C.R.S. (1973). In accordance with the latter provisions, the District's petition for organization recited that a service plan detailing the District's proposed sanitation service had been approved by separate resolutions of the boards of county commissioners of both counties.

In March of 1981, the District's board of directors, in an effort to provide domestic water service to a portion of the District located in Jefferson County, adopted a resolution to convert the District to a metropolitan district. A modified service plan incorporating the additional water service authority for the District was subsequently submitted to the boards of county commissioners of the two counties. After separate public hearings, the Jefferson County board approved the modified plan, but the Clear Creek board (the Board), the respondent here, disapproved it. The District then petitioned the district court, pursuant to section 32-1-1006(2), 13 C.R.S. (1985 Supp.), for an order declaring it a metropolitan district based on the resolution of its board of directors. The district court granted the petition.

The Board appealed the district court's order, contending that section 32-1-207(2), 13 C.R.S. (1985 Supp.), requires the Board to approve any material modification of the service plan before the District could assume the proposed additional power and authority. The Court of Appeals agreed that the Board's approval was a prerequisite to any change in the District's service, but did not rely on section 32-1-207(2). Rather, the court determined that the District's petition under section 32-1-1006(2) constituted a "complete reorganization of a municipal body" and "the organization of a new and different special district." *Upper Bear Creek*, 682 P.2d at 63. Thus, the court concluded that the District was required to file with its petition for conversion the approval of the modified service plan by the appropriate board of county commissioners pursuant to sections 32-1-202(1) and 32-1-205(2), 13 C.R.S. (1985 Supp.).

While we agree that the Board's approval of the modified service plan was necessary, we do not agree that such a result is warranted because the District's petition pursuant to section 32-1-1006(2) amounted to a "reorganization" of the District requiring the District, as a "new" entity, to comply with the obligations imposed by sections 32-1-202(1) and 32-1-205(2). Rather, we conclude that the District, as a service plan district, was required to obtain approval of its modified service plan pursuant to section 32-1-207(2) before it could assume the additional authority proposed in its petition for conversion.

The two statutory provisions pertinent to resolution of this case, sections 32-1-207(2) and 32-1-1006(2), are contained in the "Special District Act" of 1981 (the 1981 Act). §§ 32-1-101 to -1307, 13 C.R.S.

(1985 Supp.).[1] Section 32–1–207(2) provides in relevant part:

> After the organization of a special district pursuant to the provisions of this part 2 and part 3 of this article, material modifications of the service plan as originally approved may be made by the governing body of such special district only by petition to and approval by the board of county commissioners in substantially the same manner as is provided for the approval of an original service plan.... Such approval of modifications shall be required only with regard to changes of a basic or essential nature, including any addition to the types of services provided by the special district....

Section 32–1–207(2) is based upon a nearly identical provision of the "Special District Control Act" of 1965 (the 1965 Act). *See* ch. 225, sec. 9, § 89–18–9, 1965 Colo.Sess. Laws 887, 892.[2] The 1965 Act, applicable to most special districts organized after May 1, 1965, *see id.,* sec. 10, § 89–18–10 at 892, required organizers of a proposed special district to submit a service plan to the board of county commissioners of each county wherein the district lies and re-quired any petition for formation of a special district filed in a district court to be accompanied by a resolution approving the service plan by such a board. *Id.,* sec. 4, 5, §§ 89–18–4, –5 at 887–88. The General Assembly consolidated the several statutory enactments creating and governing Colorado's various special districts in the 1981 Act; the 1965 Act was repealed and re-enacted as part 2 of the 1981 Act.

Section 32–1–1006(2), pursuant to which the District petitioned the district court for conversion to a metropolitan district, provided in part:

> A special district organized for water or sanitation or for water and sanitation purposes, upon the filing of a resolution of the board [of directors of the special district] with the court may become a water and sanitation or metropolitan district, respectively, possessing all the rights, powers, and authority of such a district....[3]

This section was derived from a substantially similar provision originally enacted in the "Metropolitan District Act" of 1947 (the 1947 Act). *See* ch. 238, sec. 15, 1947 Colo.Sess.Laws 658, 670.[4] Prior to 1981,

1. The 1981 Act became effective July 1, 1981. *See* ch. 382, sec. 43, 1981 Colo.Sess.Laws 1542, 1628. The District was organized in September 1978 and it filed its petition for conversion in August 1981. Therefore, reference to the pertinent statutory provisions throughout this opinion will be made according to the statutes as in effect at the time the District was organized or at the time it filed its petition for conversion.

2. This provision of the 1965 Act was originally codified at C.R.S.1963, § 89–18–9(3) (1965 Perm.Cum.Supp.). At the time the District filed its petition for organization, the provision was codified at § 32–1–209(3), 13 C.R.S. (1973), and provided as follows:

> After the organization of a special district pursuant to the provisions of this part 2, material modifications of the service plan as originally approved may be made by the governing body of such special district only by petition to and approval by the board of county commissioners in substantially the same manner as is provided for the approval of an original service plan; except that the processing fee for such modification procedure shall not exceed one hundred dollars. Such modifications shall be required only with regard to changes of a basic or essential nature and shall not be required for changes of a mechanical type necessary only for the execution of the original service plan.

3. Section 32–1–1006(2) was amended after the District filed its 1981 petition. The amendment required that any contemplated conversion pursuant to § 32–1–1006(2) must be approved at an election in the special district before a court could order such a conversion. *See* ch. 372, sec. 1, § 32–1–1006(2), 1983 Colo.Sess.Laws 1280, 1280–81.

4. At the time the District filed its petition for organization, the 1947 Act was codified at §§ 32–3–101 to –133, 13 C.R.S. (1973). Section 32–3–115(5), the provision from which § 32–1–1006(2)(a) was derived, provided as follows:

> A district for water or sanitation purposes, upon the filing of a resolution of the board with the district court having jurisdiction, may become a metropolitan district possessing all the rights, powers, and authority of such a district if petitions for the creation of a metropolitan district, partially or wholly within the water or sanitation district, are not then pending or if a metropolitan district does not already exist wholly or partly within the boundaries of the sanitation or water district.

the 1947 Act was one of several special statutes regulating the creation and functions of particular special districts in this state. Although the 1947 Act was repealed in the 1981 Act, *see* ch. 382, sec. 42, 1981 Colo.Sess.Laws 1542, 1628, certain provisions of the 1981 Act, such as section 32–1–1006(2), closely track provisions of the 1947 Act.

It is not open to question that when the District filed its petition for organization, it was subject to the provisions of the 1965 Act, as then codified at sections 32–1–201 to –209, 13 C.R.S. (1973). The 1965 Act applied to "any petition for the formation of any proposed 'special district' filed in any district court of competent jurisdiction." § 32–1–203, 13 C.R.S. (1973).[5] A "special district" was defined under the 1965 Act as

> any water district, sanitation district, fire protection district, or other quasi-municipal corporation ... organized under the local improvement and service district laws of this state but excluding all special service and local improvement districts as are confined exclusively within the boundaries of any existing city, city and county, or incorporated town.

*Id.*[6] The District was such an entity, and thus remains subject to the requirements of the 1965 Act as now codified in part 2 of the 1981 Act.

▪ Under part 2 of the 1981 Act, organizers of a proposed special district still must submit a service plan to the relevant board of county commissioners, and any petition for organization must be supported by a resolution of that board approving the service plan. *See* §§ 32–1–202(1), –205(1),

13 C.R.S. (1985 Supp.). However, like the 1965 Act, part 2 of the 1981 Act is not limited only to the regulation of the pre-organization procedure for creation of a proposed special district. Section 32–1–207(2) requires that when material modifications of a service plan are sought "*[a]fter the organization of a special district* pursuant to the provisions of this part 2 and part 3 of this article" such modifications can be made "only by petition to and approval by the board of county commissioners." (emphasis added). Section 32–1–207(2) further provides that the type of modification requiring board approval includes "any addition to the types of services provided by the special district."

▪ The District's modified service plan proposed to add water service authority to the District's existing sanitation authority. In addition, the District's proposed conversion to a metropolitan district could have dramatically expanded its service authority. A metropolitan district provides two or more of nine separate services, including water and sanitation. *See* § 32–1–103(10) (1985 Supp.). By the specific terms of section 32–1–207(2), the District's proposed assumption of additional service authority was a material modification of its service plan. As a special district organized pursuant to the 1965 Act, the District's modified service plan required approval of the Board before the changes contemplated therein could be implemented. *See Senior Corp. v. Board of Assessment Appeals*, 702 P.2d 732 (Colo.1985); *see also Millis v. Board of County Commissioners*, 626 P.2d 652 (Colo.1981).

---

5. When § 32–1–203, 13 C.R.S. (1973), was repealed and reenacted in the 1981 Act, *see* § 32–1–201, 13 C.R.S. (1985 Supp.), the word "formation" in the provision was replaced with "organization." We have noted that this change did not alter the basis for applicability of the 1965 Act. *See Senior Corp. v. Board of Assessment Appeals*, 702 P.2d 732, 744 n. 18 (Colo. 1985).

6. This definition of "special district" was not included in the 1965 Act as reenacted in part 2 of the 1981 Act. The definition of special district as applicable to all of the 1981 Act, unless otherwise indicated, is now contained in § 32–1–103(20), 13 C.R.S. (1985 Supp.), and provides as follows:

> "Special district" means any quasi-municipal corporation and political subdivision organized or acting pursuant to the provisions of this article. "Special district" does not include any entity organized or acting pursuant to the provisions of article 8 of title 29, article 20 of title 30, article 25 of title 31, or articles 41 to 48 of title 37, C.R.S.

■ Because we conclude that the District was required to obtain approval by the Board of the modified service plan pursuant to section 32–1–207(2), we regard the Court of Appeals' conclusion that the District's conduct in this instance constituted a "reorganization" of the District as unnecessary for resolution of this case, and we, therefore, disapprove it. Neither section 32–1–207(2), section 32–1–1006(2), nor any other provision of the 1981 Act discusses any procedure for "reorganization" of a special district. The General Assembly has provided a comprehensive scheme under the 1981 Act for the organization, governance, consolidation, and dissolution of special districts subject to that enactment. In light of the absence of any legislatively created procedure for "reorganization" in this comprehensive scheme, we deem it inadvisable to superimpose on the 1981 Act a judicially crafted procedure for "reorganization."

We conclude that the District, as a service plan district organized pursuant to the 1965 Act, was required to obtain approval from the Board of the proposed modified service plan. Accordingly, the judgment of the Court of Appeals is affirmed.