**John J. HAGGERTY III,**
**Plaintiff–Appellee,**

v.

**POUDRE HEALTH SERVICES DIS-TRICT, f/k/a Poudre Valley Hospital District, Defendant–Appellant.**

No. 96CA0701.

Colorado Court of Appeals,
Div. I.

June 12, 1997.

John J. Haggerty, III, Pro se.

Hayes, Phillips & Maloney, P.C., John E. Hayes, Corey Y. Hoffmann, Denver, for Defendant–Appellant.

Grimshaw & Harring, Norman F. Kron, Jr., Thomas T. Grimshaw, Ronald L. Fano, Denver, J. Evan Goulding, Denver, Amicus Curiae for Special District Association of Colorado.

Opinion by Judge MARQUEZ.

Defendant, the Poudre Health Services District (District), f/k/a Poudre Valley Hospital District, appeals from the judgment of the trial court enjoining it from providing certain types of health-related services. We affirm.

The District was originally established by court decree in 1960 under the provisions of Colo.Sess.Laws 1959, ch. 179, which set forth the powers and procedures for the creation of a hospital district. A property tax for the benefit of the District was approved by the Board of Directors for the District in 1960 and continues to be assessed against and collected from property owners within the District. Over $2 million was collected in 1995.

From 1960 through April 1994, the District operated and maintained what is known as the Poudre Valley Hospital. In April 1994, the District created a nonprofit corporation, Poudre Valley Health Care, Inc., to which it leased the hospital facilities. Under the terms of the lease, the District received approximately $6.6 million in rent in 1995. Approximately $300,000 of this amount went to the District, and the remainder was used to pay the bonded indebtedness owed by the property owners in the District.

Since the "privatization" of the hospital, the District has not contributed any taxpayer funds towards the operation and maintenance of the hospital. Except for the lease arrangement, the district has not established, maintained, and operated a facility providing health or personal care services. Although the District continues to own the hospital and has several employees, none of the employees directly provides medical care or treatment to any individuals in the District.

In accordance with a new mission statement, the District identified various "obsta-

cles to health" in the community and attempted to address those issues through several health-related initiatives. These initiatives included: (1) raising the infant immunization rate in northern Larimer County, (2) increasing access to primary health care for lower income persons, and (3) preventing juvenile violence. The District sought to implement these initiatives by entering into contracts with various public and private entities that would provide the necessary facilities and services. District funds have been allocated for these programs.

In 1995, plaintiff, John J. Haggerty, III, as a qualified elector in the District, brought this action seeking injunctive relief against the District. Plaintiff asserted that the District was without authority under the Special District Act, § 32–1–101, et seq., C.R.S. (1996 Cum.Supp.), to implement or fund the initiatives.

Plaintiff moved for a temporary restraining order and a preliminary injunction against the District. The trial court conducted a hearing on plaintiff's motion which, by agreement of the parties, was converted into a trial on the merits on plaintiff's claim for injunctive relief. The court then issued a written order concluding that the District had exceeded its authority under the Special District Act. Although the court found that the objectives of the initiatives were laudable, it nevertheless enjoined the District from using District funds on any programs or purposes other than those permitted by the Special District Act.

The District contends that the trial court erred in determining that the Special District Act did not authorize it to fund the services it sought to offer through the initiatives. We disagree.

■ The District, as a political subdivision of the state, possesses only those powers that are expressly conferred upon it by the constitution and by statute and such incidental implied powers as are reasonably necessary to carry out the express powers so conferred. *See Romer v. Fountain Sanitation District,* 898 P.2d 37 (Colo.1995).

■ The Special District Act is a comprehensive legislative scheme setting forth the powers and procedures for the establishment and organization of a special district. *See* § 32–1–101, et seq., C.R.S (1996 Cum.Supp.); *Upper Bear Creek Sanitation District v. Board of County Commissioners,* 715 P.2d 799 (Colo.1986).

In this regard, the Special District Act in § 32–1–1001(1), C.R.S. (1996 Cum.Supp.) sets forth common powers applicable to any special district, including the power:

(d) to enter into contracts and agreements affecting the affairs of the special district;

. . . .

(m) to adopt, amend, and enforce bylaws and rules and regulations for carrying on the business, objects, and affairs of the board and of the special district;

(n) to have and exercise all rights and powers necessary or incidental to or implied from the specific powers granted to special districts.

At the time of the trial court's decision, the Special District Act provided that:

(1) In addition to the powers specified in section 32–1–1001, the board of any hospital district has the following powers for and on behalf of such district:

(a) To establish, maintain, and operate public hospitals, convalescent centers, nursing care facilities, intermediate care facilities, emergency facilities, community clinics, and other facilities providing health and personal care services and to organize, own, operate, control, direct, manage, contract for, or furnish ambulance service in said district; ...

Colo.Sess.Laws 1981, ch. 382, § 32–1–1003 at 1597; *see also* Colo.Sess.Laws 1981, ch. 382, § 32–1–103(9) at 1544 (similarly defining the term "hospital district").

Subsequently, following the trial court's decision but prior to filing of briefs in this appeal, this statute was amended by the General Assembly. *See* § 32–1–1003(1)(a), C.R.S. (1996 Cum.Supp.). The District, however, seeks review based only upon the statutory language in effect on the date of the trial court's judgment.

In its ruling, the trial court determined that the operative language for purposes of defining the District's authority under the Special District Act was the General Assembly's use of the words "care facilities" in § 32–1–1003. The court concluded that except for that portion of the statute concerning the provision of ambulance services, which required no facility—just service—the statute required a hospital district to operate a facility. The court further concluded that the "award of district funds to other entities is not authorized or implied," and that the District was acting beyond the scope of the powers granted under the statute.

The District first argues that the trial court erred by finding, in essence, that the term "health" in that section is synonymous with the word "medical." Because, in our view, the key is not so much the distinction between these terms, but rather the requirement of the statute with regard to "facilities," we conclude that the court properly interpreted the statute.

■ In interpreting a statute, our primary goal is to ascertain and give effect to the legislative purpose underlying a statutory enactment. To discern this legislative purpose, we first examine the statutory language, giving words and phrases their plain and ordinary meaning. In addition, the statute should be interpreted so as to give consistent, harmonious, and sensible effect to all of its parts. *Colorado Common Cause v. Meyer,* 758 P.2d 153 (Colo.1988); *Town of Parker v. Colorado Division of Parks & Outdoor Recreation,* 860 P.2d 584 (Colo.App. 1993).

■ At the time of the trial court's ruling, § 32–1–1003, as quoted above, specified that a hospital district may "establish, maintain, and operate" specific types of health-related facilities and "other facilities ... providing health and personal care services." In this context, the General Assembly's use of the term "other facilities" necessarily refers to other types of health-related facilities. *See Colorado Common Cause v. Meyer, supra,* 758 P.2d at 162 (when general words follow a particularized enumeration of types, the general words, in the absence of any manifest legislative intent to the contrary, "should be construed as applicable only to persons or things of the same general nature or class as those enumerated.") *See also* § 32–1–1003(1)(a), C.R.S. (1996 Cum.Supp.) (specifically requiring that any "other facilities" be licensed or certified pursuant to § 25–1–107(1)(*l*), C.R.S. (1996 Cum.Supp.) which governs the licensing of any type of health care facility except those wholly owned and operated by any governmental unit or agency).

■ A review of the language and organization of § 32–1–1003 strongly suggests that the General Assembly intended that the provision of "health and personal care services" be dependent upon a hospital district's operation of a hospital or health-related facility. As set forth in that section, the phrase "health and personal care services" follows a listing of the types of facilities a hospital district may establish, maintain, and operate to provide such services. Thus, even if we were to assume that the services offered by the District in the initiatives constituted "health and personal care services," we would still conclude that the District was not authorized to fund such services unless the District provided the services through the maintenance and operation of a hospital or other health-related facility.

This interpretation is supported by the General Assembly's treatment of ambulance services within the same section. Unlike "health and personal care services," the General Assembly did not link the provision of ambulance services to any type of facility that was to be established, maintained, and operated by the District. Rather, a hospital district is authorized to provide the ambulance services itself without maintaining a facility to provide that service. Thus, if the General Assembly had intended for hospital districts to offer "health and personal care services" independent of the maintenance and operation of a hospital or other health-related facility, it could have expressly done so as it did with ambulance services.

Consistent with this conclusion, we note that the original statutes permitting the creation of a hospital district authorized a hospital district only to "establish and maintain a

public hospital or hospitals." Colo.Sess.Laws 1959, ch. 179 at 577. Although this authority was expanded over time to include not only hospitals but convalescent centers, nursing care facilities, intermediate care facilities, emergency facilities, and community clinics, provision of any services by the hospital district was always dependent upon its establishment and maintenance of some type of health-related facility. *See* Colo.Sess.Laws 1973, ch. 280; Colo.Sess.Laws 1981, ch. 382.

We further note that, in the 1996 amendments to the Special District Act, the General Assembly changed the term "hospital district" to "health service district" and modified § 32–1–1003. However, because the District seeks review based only upon the statutory language in effect at the time of the trial court's ruling, we express no opinion on the authority of a "health services district" to fund the types of services outlined in the District's initiatives.

█ We also conclude that the common powers applicable to special districts do not independently provide a hospital district with the authority to fund the services outlined in the initiatives.

█ While these powers are broad and extensive, none of them expressly permits a hospital district to provide "health and personal care services." *See Romer v. Fountain Sanitation District, supra.* Thus, even though a hospital district has authority to enter into contracts and agreements affecting the affairs of the district, to adopt rules and regulations for carrying on the business, objects, and affairs of the district, and has all rights and powers necessary or incidental to or implied from the specific powers granted to the district, such powers may not be used to go beyond the express powers granted. *See* § 32–1–1001, C.R.S. (1996 Cum.Supp.); *Black v. First Federal Savings & Loan Ass'n,* 830 P.2d 1103 (Colo.App.1992), *aff'd sub nom. La Plata Medical Center Associates, Ltd. v. United Bank,* 857 P.2d 410 (Colo.1993).

METZGER and CRISWELL, JJ., concur.