# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: April 7, 2015

**NO. 33,419**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**ROBERT GEORGE TUFTS,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Marci Beyer, District Judge**

Hector H. Balderas, Attorney General
Paula E. Ganz, Assistant Attorney General
Santa Fe, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Kimberly Chavez Cook, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**_____OPINION**

**SUTIN, Judge.**

{1} In this appeal, we must construe a statute proscribing the sending of forbidden "obscene images" to a child under sixteen years of age by means of an "electronic communication device." *See* NMSA 1978, § 30-37-3.3 (2007). Defendant Robert George Tufts was convicted under the statute based on his having hand-delivered such images contained on an SD (secure digital) or memory card to a fifteen-year-old. We hold that the statute was not intended to cover Defendant's act.

**BACKGROUND**

{2} Child met Defendant in about October or November 2011. Defendant, in his late thirties, gave Child at least two cell phones over several months, and they texted or talked to each other daily on these cell phones. Later in their relationship, during which the two had not engaged in a physical relationship, nor had Defendant made any advances, Defendant removed the SD card from a cell phone, recorded himself nude and masturbating, and he placed the SD card back in the cell phone and handed the phone to Child. The SD card also contained photographs of an adult penis.

{3} The police were made aware that Child had received the images. After interviewing Child, the police called Defendant and asked him to come to the police station. Defendant went to the station on his own, and the police interviewed him.

Police testimony at trial indicated that, in the interview, Defendant admitted his actions and consented to a search of his and Child's cell phones. Defendant stated that he was in love with Child and that his behavior was out of character but he felt compelled to do as he did because God sent this relationship to him. Also in the interview, Defendant admitted to the interviewing officer that he knew "that it was wrong." When asked by the officer why he thought that, Defendant stated that he had "looked it up[,]" and he admitted that sending photos and the video was "against the law."[1]

{4}    The law enforcement officer, who conducted a forensic evaluation of the SD card and of the at-issue cell phones, one that belonged to Child and the other that belonged to Defendant, testified that his findings were consistent with Defendant's admission that Defendant had transferred the images onto an SD card and then placed it in the phone that he gave to Child. The officer further testified that the at-issue images were not transferred through the cell phone network and confirmed that "no one hit a send button" to transmit the images electronically.

---

[1] The trial record is not clear whether Defendant's research occurred before he handed the SD card to Child or afterward. Further, Defendant contends on appeal that this interview constituted a custodial interview requiring *Miranda* admonitions and that his statements and the evidence acquired from the statements should have been suppressed. He moved to suppress before trial, and the district court denied the motion. Because we reverse on the ground that the statute under which Defendant was convicted did not cover his conduct, we do not reach the suppression issue.

2

{5}     Defendant was indicted on April 1, 2012, charged with one count of violating Section 30-37-3.3, a fourth degree felony, which reads, in part, as follows:

> Criminal sexual communication with a child consists of a person knowingly and intentionally communicating directly with a specific child under sixteen years of age by sending the child obscene images of the person's intimate parts by means of an electronic communication device when the perpetrator is at least four years older than the child.

{6}     The term "electronic communication device" is defined in Section 30-37-3.3(C)(1) as: "a computer, video recorder, digital camera, fax machine, telephone, pager[,] or any other device that can produce an electronically generated image[.]"

{7}     At the close of the State's case, Defendant moved for a directed verdict on the ground that his conduct was not covered by the statute. The district court denied Defendant's motion, and Defendant was then convicted of violating Section 30-37-3.3, followed by a judgment and sentence of the district court. Defendant was sentenced to a term of eighteen months followed by one year parole. The court required Defendant to serve 146 days of his sentence in the custody of the Doña Ana County Detention Center as time served, but Defendant received pre-sentence confinement credit for those days; and the court suspended the remainder of the sentence (one year, thirty-six days) to be followed by probation.

3

**DISCUSSION**

{8} Defendant contends on appeal that Section 30-37-3.3(A) does not cover his conduct, because he was not "communicating" with Child "by sending" the images "by means of an electronic communication device." This case requires us to construe Section 30-37-3.3. As stated in *State v. Office of the Public Defender ex rel. Muqqddin*, 2012-NMSC-029, ¶ 13, 285 P.3d 622,

> statutory construction is a matter of law we review de novo. Our primary goal is to ascertain and give effect to the intent of the Legislature. In doing so, we examine the plain language of the statute as well as the context in which it was promulgated, including the history of the statute and the object and purpose the Legislature sought to accomplish. We must take care to avoid adoption of a construction that would render the statute's application absurd or unreasonable or lead to injustice or contradiction.

(Alteration, internal quotation marks, and citation omitted.)

{9} The law enforcement officer who conducted the interview of Defendant stated at trial that an SD card is a "base digital storage device" and that "[y]ou can plug it into a computer using an adapter and store files on it just like you would on a thumb drive or an external hard drive." Further, as to the meaning of the term "sending," calling on the many and varied dictionary definitions of "send" and the context of the statute, the State argues on appeal that the statute's plain language is not limited to material sent by email or text over a network. And the State argues that the plain and broad reach of the statute's references to electronic communication devices is meant

4

to "include several devices that are not, or are not necessarily, vehicles for transmitting images (such as images of intimate parts) over a network." According to the State, by its open-ended "any other device" language "[i]n the context of a statute addressing fast-developing technologies, it can be inferred that the [L]egislature contemplated that electronic communication devices would continue to evolve and be developed[] and that the [L]egislature intended to broadly include all manner of electronic communication devices within the scope of [the statute]."

{10} From this reasoning, the State concludes and argues that the statute was intended to cover SD cards used to facilitate sending or transmitting an image even when the image is not sent over the network and that "[t]he fact that an image was in a storage device at some point in the chain between its creation and its receipt by [Child] does not negate the fact [that] it was sent to [Child] in violation of [Section] 30-37-3.3."

{11} Countering an argument by Defendant that emphasizes distance, the State argues that there is no significant difference between Defendant sitting next to Child and handing the SD card to her, and Defendant sitting next to Child and transmitting the material via his cell phone with the SD card in it to her cell phone. And discounting Defendant's argument that the social evil at hand is anonymous-distance

5

transmission to escape detection, the State argues that nothing in the statute indicates any exception in that regard.

{12} The State's argument goes beyond the intended coverage of the statute. The SD card stores or houses images. It was hand delivered. What it contained was not communicated to Child by "sending" the images through an electronic communication device. Section 37-30-3.3(A) is specific and plain enough in its language. The sender must *communicate* with the minor, and the communication must be made by *sending* the image *by means of* an electronic communication device, here a cell phone, used to electronically communicate the image by sending it. Nothing in the context of Section 37-30-3.3(A) and (C)(1) says that hand delivery of an image stored on an SD card which, in turn, is placed in an electronic communication device, is intended to be prohibited.

{13} The act of delivery by Defendant is pretty clearly covered under another statute. NMSA 1978, Section 30-37-2(A) (1973) outlaws delivering or providing a minor with images such as those contained on the SD card. The statute reads, in part:

> It is unlawful for a person to knowingly sell, deliver, distribute, display for sale[,] or provide to a minor . . . any picture, photograph, drawing, sculpture, motion picture film[,] or similar visual representation or image of a person or portion of the human body, or any replica, article[,] or device having the appearance of either male or female genitals which depicts nudity, sexual conduct, sexual excitement[,] or sado-masochistic abuse and which is harmful to minors[.]

6

A person violating Section 30-37-2(A) is guilty of a misdemeanor. NMSA 1978, § 30-37-7(A) (1985). The language of a statute should be construed together with other statutes relating to the same subject matter. *State v. Davis*, 2003-NMSC-022, ¶ 12, 134 N.M. 172, 74 P.3d 1064 (stating that "statutes in pari materia should be construed together"). Here, Section 30-37-3.3 is part of Article 37 of New Mexico's criminal statutes. Article 37 relates particularly to "sexually oriented material [that is] harmful to minors." Section 30-37-2(A), also part of Article 37, clearly covers Defendant's at-issue conduct in this case.

{14} In addition, the Legislature's use of the term "provide" in Section 30-37-2(A) when read together with the Legislature's use of the term "sending" in Section 30-37-3.3 indicates that the Legislature recognized a distinction between the verbs "to send" and "to provide" in the context of prohibiting adults from sharing depictions of intimate body parts with children. The State's attempt to blur this distinction by stretching the meaning of "sending" is problematic.

{15} The State's argument runs contrary to the principle of statutory construction that requires courts to attribute the usual and ordinary meaning to words used in a statute. *State v. Melton*, 1984-NMCA-115, ¶ 16, 102 N.M. 120, 692 P.2d 45. The Oxford Dictionaries defines "send" primarily as "[c]ause to go or be taken to a particular destination; arrange for the delivery of, especially by mail[,]" and

7

secondarily, as "[c]ause (a message or computer file) to be transmitted electronically[.]" Oxford Dictionaries, http://www.oxforddictionaries.com/us/ definition/american_english/send (last visited Mar. 6, 2015). The same dictionary defines "provide" primarily as "[m]ake available for use; supply[,]" and secondarily, as "[e]quip or supply someone with[.]" *Id.* http://www.oxforddictionaries.com /us/definition/american_english/provide (last visited Mar. 6, 2015). From these definitions and as a matter of common parlance, "to send" when used to describe the act of causing another person to receive a physical object evokes the notion of a third-party carrier. On the other hand, the verb "to provide" to describe the act of causing another person to receive a physical object more appropriately, although perhaps not exclusively, describes an in-person exchange.

{16} In *Muqqddin*, our Supreme Court cautioned that "[w]ords are the beginning, not the end; they serve as portals into the *thoughts* behind the words of a criminal statute." 2012-NMSC-029, ¶ 54. "Where . . . those thoughts are revealed in another, lesser statute, that becomes a fairly reliable indicator of legislative intent, both as to the specific crime and, more importantly, the gravity of the offense." *Id.*; *see also Yates v. United States*, 574 U.S. ___, 135 S. Ct. 1074, 1081 (2015) ("[T]he plainness or ambiguity of statutory language is determined not only by reference to the language itself, but as well by the specific context in which that language is used[]

8

and the broader context of the statute as a whole." (alterations, internal quotation marks, and citation omitted)). "Ordinarily, a word's usage accords with its dictionary definition. In law as in life, however, the same words, placed in different contexts, sometimes mean different things." *Id.* at 1082.

{17} It is for the Legislature, not this Court, to broaden Section 30-37-3.3's coverage.

> It is for the Legislature, not the courts and not the district attorney, to strike the delicate balance between those grave crimes punishable as felonies and those lesser infractions punishable as only misdemeanors. That balance requires value judgments that should be made by the people's representatives, not judicial officers, under a constitutional system of separation of powers.

*Muqqddin*, 2012-NMSC-029, ¶ 52.

**CONCLUSION**

{18} We hold that Defendant was wrongly charged with violation of Section 30-37-3.3 and was wrongly convicted and sentenced under that statute. We reverse Defendant's conviction, judgment, and sentence.

{19} **IT IS SO ORDERED.**

_____

**JONATHAN B. SUTIN, Judge**

9

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**M. MONICA ZAMORA, Judge**